# In re Contested Election of Barber, Prothonotary, &c.

1. The provisions of the new constitution and the Act of May 19th 1874, regulating contested elections, modify, but do not repeal, the provisions of the Act of July 2d 1839, relating to the same subject.

2. The governor has no authority to issue a commission to a prothonotary pending a contest for that office.

3. For granting commissions to the prothonotary and other county officers, there is sufficient warrant in the Act of July 2d 1839, which, for this purpose, the new constitution and the legislation under it have left unimpaired.

4. To repeal a statute by implication there must be a repugnancy between the provisions of the new law and the old, so positive as to be irreconcilable.

5. Where a late statute is absolutely repugnant to a former one only in part, it repeals the former one only so far as the repugnancy extends and leaves all the remainder in force.

March 11th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1877, No. 128.

This was a case stated as follows:—

That on the 24th of March 1875, S. W. Trimmer, in pursuance of a due election, was duly commissioned by the governor of the Commonwealth to have and to hold the office of prothonotary of the Court of Common Pleas of said county until the first Monday of January 1877, and until his successor should be duly qualified; and that, in pursuance of said commission, the said Trimmer was duly qualified and exercised and holds, and stills claims to hold and exercise, the said office against the protest and demand of A. P. Barber; that at the general election held in and for said county on the 7th of November 1876, A. P. Barber was returned as duly elected to the said office, and in pursuance of said election and return was, on the 7th day of December 1876, commissioned

[In re Contested Election of Barber.]

by the Governor of the Commonwealth to hold and exercise the said office of prothonotary from the first Monday of January 1877, for the full term and period of three years and until his successor shall be duly qualified; and that the said Barber has given bond and taken the oath prescribed by law, and claims to be duly qualified to hold and exercise the said office; that on. the 6th day of December, 1876, a petition was filed in the Court of Quarter Sessions to contest the election of the said A. P. Barber to the said office, which is still pending, and notice of which was given to the governor on the 7th of December.

The question to be determined by the court is, whether the said A. P. Barber or S. W. Trimmer is entitled to hold and exercise the said office of prothonotary pending the contest aforesaid; and it is agreed that upon determination of the said question, judgment may be entered by the court in the same manner, and to have the same force and effect, as though a writ of quo warranto had been duly issued, served, returned, and issue joined thereon.

The following are the provisions of law relied upon to determine this question.  The 3d and 5th sections of the Act of July 2d .1839, Pamph. L. 559 ; Purd. Dig. 1181, pl. 66–68, provide :—

Section 3.  " It shall be the duty of the return judges of the election for representatives for each county, when they meet to make out returns for representatives, also to make out true duplicate returns of the elections of prothonotaries, clerks, recorders of deeds and registers of wills, one of which said returns shall be filed in the prothonotary's office of the proper county, and the other return shall be immediately transmitted by the sheriff, by mail, to the secretary of the Commonwealth, to be filed in his office.  And it shall be the duty of such return judges to give to each person elected to any or all of said offices a certificate of his election ; and the persons who appear by such certificates and returns to be duly elected, shall be commissioned by the governor for the respective office or offices for which they may have been elected, for three years, if they shall so long behave themselves well, and until their successors shall be duly qualified ; Provided, That no commission shall issue, within the lapse of thirty days after the election, and shall commence and take effect from the first day of December next after such election, unless when the same is suspended by reason of a contest under the fifth section of this act, in which case the commission shall take effect from the time of the legal qualification of the officer under the same, and expire on the first day of December, as in other cases."

The fifth section of the act is in these words :—

" The returns of the elections, under this act, shall be subject to the inquiry, determination and judgment of the Court of Common Pleas of the proper county, upon complaint in writing, of thirty or more of the qualified electors of the proper county, of undue elec-

[In re Contested Election of Barber.]

tion or return of any such officer, two of whom shall take and subscribe an oath or affirmation that the facts set forth in such complaint are true to the best of their knowledge and belief. And the said court shall, in judging concerning such election, proceed upon the merits thereof, and shall determine finally concerning the same, according to the laws of this Commonwealth; and the prothonotary of the said court shall immediately certify to the governor the decree of the said court on such election, and in whose favor such contested election has determined. And the said court shall hear and determine such contested election, at the next term after the election shall have been held; and such complaint shall not be valid or regarded by the court, unless the same shall have been filed in the prothonotary's office within ten days after the election; and in case such complaint is filed within the time above mentioned, it shall be the duty of the prothonotary to transmit by mail immediately to the governor a certified copy thereof; and in such case, *no commission shall be issued until the court shall have determined and adjudged on such complaint as aforesaid.*"

The Act of May 19th 1874, provides, inter alia, as follows :—

Section 16. Cases of the fourth class (which include the office of prothonotary), shall be tried and determined by the Court of Quarter Sessions of the Peace of the county in which the election contest shall be held.

Section 18. The commencement of proceedings in every case shall be by petition, which shall be made and filed as herein required within thirty days after the day of election. The petition shall concisely set forth the cause of complaint. * * * In cases of the second class the petition shall be signed by * * *; and in cases of the fourth class by at least twenty-five, and shall be verified by at least five of the petitioners by affidavit. * * * The petition shall be presented to the court or law judge having jurisdiction. * * * Notice of the filing of the petition, with a copy thereof, shall be served upon the person whose right of office shall be contested, together with a rule to answer at the time fixed for hearing, which notice, copy and rule shall be served such length of time before the day fixed for hearing as the said court or judge shall require, not exceeding forty days in cases of the second and third classes, and in all other cases not exceeding thirty days.

This act contains no direction to notify the governor of a contest, and makes no provision that the commission shall be withheld pending the contest.

On the 3d of January 1877, the court entered judgment of ouster against Trimmer, who took this appeal.

*Stanley Woodward, John Lynch* and *Charles L. Lamberton,* for plaintiff in error.—Unless the Act of 1874 repeals the Act of 1839, Trimmer was right in retaining the office pending contest,

[In re Contested Election of Barber.]

and the commission issued by the governor was premature and without force. The two acts are not inconsistent and can stand together: Jefferson County v. Reitz, 6 P. F. Smith 44; Howard Association's Appeal, 20 Id. 346. The Act of 1874 was intended to carry out the 17th sect. of article 8 of the constitution of 1873, and its purpose was to vest the jurisdiction in all cases of contested elections in the courts of law.

The courts theretofore had no power to adjudicate upon election contests, except in the cases of county and township officers. Now they are to hear and decide all contests, from that of presidential electors down to the most unimportant township office. The Act of 1874 was a necessary adjunct to this constitutional change of system. It aimed at a classification of the several classes of contested elections, and a distribution of jurisdiction among the courts of the Commonwealth. In regard to cases of the fourth class, which includes the office of prothonotary, the old law is amended in two essential particulars only. These are, first, in giving the jurisdiction to the Quarter Sessions instead of the Common Pleas, and second, in enlarging the time for inaugurating the contest from ten days to thirty days after the election. In other respects this act is entirely in harmony with that of 1839. Both can stand. Indeed, both must stand to make a round and complete plan of operation.

The Act of 1874 is silent upon many provisions of importance in the Act of 1839, and it certainly cannot be contended that where they are not altered or supplied by inconsistent provisions these are not still in force. It seems clear that the intent of the legislature, as expressed in this act, was to secure a speedy determination of all contested elctions, and meanwhile to withhold from the contestants the final evidence of title to office. The thing complained of being an undue election or return, the question becomes a judicial one. Until the courts have exercised their authority, and rendered their judgment, the executive hand is stayed. To hold otherwise, is to confuse the functions of the different departments of the government, and clothe the executive officer with judicial power. We contend, therefore, that the 5th sect. of the Act of 2d July 1839, is still in force, and that no commission could legally issue to the defendant while this contest was pending in court.

*Henry W. Palmer, E. S. Osborne* and *A. T. McClintock,* for defendant in error.—There is no requirement in the constitution of 1873 for the issuing of a commission to any county officer. The officer holds an indefeasible title by virtue of the election, the returns and the certificates, under the seal of the court, provided for in section 13 of the Act of 1874. This certificate is prima facie evidence of the title to his office, and under it he is entitled to the exercise of such office until ousted by a judicial decree. Under a contest provided for by the Act of 1874, no mere legisla-

[In re Contested Election of Barber.]

tive enactment could suspend his right, whether passed before or after the date of the constitution of 1873. His title is complete under the constitution. No commission is required, and the attempt of the legislature to suspend or abridge his vested right would be unconstitutional. The Act of 1874 repeals and abrogates the Act of 1839, because, 1st. It is an affirmative statute plainly inconsistent with the former statute, introducing a new rule on the same subject. Because, 2d. It is in pursuance of the new constitution, introducing a general and uniform system of contesting elections, complete in itself, capable of general application in the terms of the statute, and which of necessity takes the place of and supplies all other methods: Johnston's Est., 9 Casey 511; Gwinner *v.* L. & D. G. Railroad Co., 5 P. F. Smith 126. The act of 1874 is the sole rule in contested elections; what it requires must be done. It does not prescribe that notice shall be served to the governor of the result of an election nor that the issue of the commission shall be suspended. Nor does it require the issue of any commission. In the face of this act this contest proceeded under the provisions of the Act of 1839. The fact that in certain cases, by the terms of that act, in the case of elector and judge, no commission is to issue until the contest is decided, is entirely persuasive that in all other cases no such delay was contemplated. An elector discharges but a single act in the exercise of his office, an act of great weight and significance, and immediately becomes *functus officio*. In the case of a judge there are many reasons growing out of considerations of the administration of public justice, which should prevent a judge without title, and under the results of an " undue election" from publicly assuming the momentous functions the law puts upon him. That an officer of this grade should act without a perfected legal warrant might justly be deprecated. The two exceptions to the Act of 1874 are thus completely vindicated, and the special reasons which justify the exceptions, lead to the conclusion, that in the non-excepted cases the officer was to assume and continue the exercise of his duties without a commission. Contests over elective officers have never been favored by the courts, and, therefore, no premium in the form of fees and perquisites to him who holds over, should be offered to stimulate contention. Full power and authority is now vested in the judges, acting as returning boards, to detect fraud, and rectify mistakes in the elections. The wrong man is much less likely to be returned than ever before. The right man ought to take the place and hold it, under the title furnished by the certificate of the judges, and be forced to vacate only when adjudged unworthy by a competent tribunal.

Mr. Justice Woodward delivered the opinion of the court, March 25th 1878.

Proceedings to contest the election of Barber as prothonotary of

[In re Contested Election of Barber.]

the Court of Common Pleas of the county of Luzerne, were begun on the 6th of December 1876, twenty-nine days after the date of the election. On the 7th of December notice of those proceedings was given to the governor, who issued a commission to Barber the same day. The question of the effect of the commission is presented by this record. S. W. Trimmer, in pursuance of a previous election, had been commissioned as prothonotary until the first Monday of January 1877, and until his successor should be duly qualified. In a case stated in the nature of a quo warranto, between Barber as plaintiff and Trimmer as defendant, the Common Pleas decided that Barber was entitled to hold and exercise the office pending the contest, and entered judgment of ouster against Trimmer.

In the determination of this question the construction of the provisions relating to contested elections of the Act of the 2d of July 1839, of the constitution of 1873, and of the Act of the 19th of May 1874, is necessarily and directly involved. The 3d section of the Act of 1839 prescribed the manner in which returns of the election of county officers should be made out, filed in the prothonotary's office, transmitted to the secretary of the Commonwealth, and delivered to the successful candidate. Thereupon commissions by the governor were required to be issued. The proviso to the section contained this explicit direction: " No commission shall issue within the lapse of thirty days after the election, and shall commence and take effect from the 1st day of December next after such election, unless when the same is suspended by reason of a contest under the 5th section of this act, in which case the commission shall take effect from the time of the legal qualification of the officer under the same, and expire on the 1st day of December, as in other cases." This direction was repeated in the concluding clause of the 5th section of the act, which regulated the mode in which election contests should be heard and determined. The language was: " In such case no commission shall be issued until the court shall have determined and adjudged on such complaint as aforesaid."

By the 3d section of the sixth article of the constitution of 1838, it was made the duty of the governor to commission the prothonotaries and clerks of the courts elected in the several counties and districts of the Commonwealth. No such provision is contained in the constitution of 1873. Whether the omission was casual or designed, direct authority is given to issue commissions to no officers except justices of the peace and aldermen, by the 11th section of the 5th article; judges of the Supreme Court, when two or more shall be elected at the same time, by the 17th section of the same article; the president judge of the court of criminal jurisdiction for the counties of Schuylkill, Lebanon and Dauphin, as a judge of the Court of Common Pleas of Schuylkill county, by the 15th section of the schedule; and associate judges not learned

[In re Contested Election of Barber.]

in the law, by the 16th section of the schedule. The duty to commission judges of the Supreme Court would seem to be implied, however, from the provision of the 2d section of the 5th article, that "each judge whose commission shall first expire, shall in turn be chief justice." The directions contained in the 16th, 18th and 19th sections of the schedule, that of the law judges of the several Courts of Common Pleas of Philadelphia and Allegheny, and throughout the state, the oldest in commission shall be president judge, also indicate an intention on the part of the convention to make no change in the mode by which the title of these officers had immemorially been authenticated. The constitution made no provisions whatever for commissions to the judges of the separate Orphans' Courts, the police magistrates of Philadelphia, or county officers of any grade. The omission in the case of the judges, however, has been supplied by the Act of the 19th of May 1874, relating to the organization and jurisdiction of Orphans' Courts; and commissions to the Philadelphia magistrates have been authorized by the 6th section of the Magistrates' Courts Act of the 5th of February 1875. The 2d section of the schedule maintains in force all laws not inconsistent with the constitution. For granting commissions to prothonotaries and other county officers there is sufficient warrant to the governor in the Act of 1839, which, for this purpose, the constitution and the legislation under it have left entirely unimpaired.

Upon this subject the Act of the 19th of May 1874 is equally silent with the constitution. It transfers the jurisdiction to hear and determine contested elections from the Common Pleas to the Quarter Sessions; it authorizes a petition by twenty-five qualified electors instead of the thirty required by the Act of 1839; it requires the verification of the petition by the oaths of five instead of two qualified electors; it extends the time allowed for filing the petition to thirty days instead of ten; it omits the direction to transmit a certified copy to the governor; and it makes no provision that, pending the contest, the commission shall be withheld. It was insisted at the argument on behalf of Barber that this statute supplied and replaced the fifth section and the proviso to the third section of the Act of 1839; that the commission to him was regularly and providently issued; and that it gave him the right to be installed in the office of prothonotary.

The Act of the 19th of May 1874 was limited to a single subject-matter. It was enacted to carry into effect the requirements of the 17th section of the eighth article of the constitution, that "the trial and determination of contested elections of electors of president and vice-president, members of the General Assembly, and of all public officers, whether state, judicial, municipal or local, shall be by the courts of law, or by one or more of the law judges thereof." The object in view was to replace a mass of incongruous and

[In re Contested Election of Barber.]

uncertain legislation by a speedy, symmetrical and uniform plan for the settlement of peculiarly difficult, exciting and angry controversies. The title of the act described it as " designating the several classes of contested elections in this Commonwealth, and providing for the trial thereof." It did not profess to regulate elections, or to define the duties of public officers, or to impose any duty or confer any power on the governor to interpose between the candidate shown by the face of the returns to be elected, and the candidate shown by the face of the returns to be defeated. A right so to interpose could only be derived from a legislative intention somewhere or in some way expressed. It has been settled that a proceeding instituted to contest an election cannot be frustrated by a commission issued afterwards: Ewing v. Filley, 7 Wright 384. The legal provisions made necessary by the general requirements of the eighth article of the constitution, were embodied in an act entitled " A further supplement to the act regulating elections in this Commonwealth," passed on the 30th of January 1874. By the 13th section of that supplement, the duty was imposed on the judges of the Courts of Common Pleas, of opening and computing the returns made by the election officers. But nothing in that section, or in the residue of the act, demanded any action of the court that could affect the rights of the parties in such a contest as this. Indeed, those rights were expressly preserved. The 13th section directed that, " if palpable mistake or fraud shall be discovered, it shall, upon such hearing as may be deemed necessary to enlighten the court, be corrected by the court, and so certified; but all allegations of palpable fraud or mistake shall be decided by the said court within three days after the day the returns are brought into court for computation; and the said inquiry shall be directed only to palpable fraud or mistake, and shall not be deemed a judicial adjudication to conclude any contest now or hereafter to be provided by law." No provision was made for transmitting to the governor, or the secretary of the Commonwealth, the result of the computation of votes, under the Act of the 30th of January, and none for certifying the judgment of the court in a contest in a case of the fourth class, under the Act of the 19th of May 1874. All steps ulterior to the specification prescribed by the two statutes were left to be governed by the provisions of existing laws, with which the legislature of 1874 decided wisely not to interfere.

It was by force of the Act of 1839, that Barber was entitled to his commission. The terms which ·authorized its issue were not more direct and clear than the terms of the proviso to the third section, which forbade it to go out while a contest was undetermined. If, under the constitution of 1873, and the Act of the 19th of May 1874, the proviso should be held to be repealed, it is not readily seen how that part of the enactment which authorized the commission could be held to survive. Both clauses stand on the same ground. Both fall, if the Act of 1874 was designed to establish

[In re Contested Election of Barber.]

a complete system in place of the system established by the Act of 1839. Both are unimpaired, if the Act of 1874 was passed simply to regulate the mode of trying and deciding election contests. Without repealing or negativing words in the new law, without a reference to the subject-matter of the proviso to the third section, and without any provision to stand in its place, there is nothing on which an implication of an intention to repeal it can be based.

The proviso, and the several sections of the Act of 1874 relating to contested elections of the fourth class, may well stand together. To adopt the theory of a repeal by implication, would be to disregard the broad equities of the question under review, as well as authoritatively-settled rules of law. "Every affirmative statute is a repeal of a precedent affirmative statute, where its matter necessarily implies a negative; but only so far as it is clearly and indisputably contradictory and contrary to the former act in the very matter (Foster's Case, 11 Rep. 63), and the repugnancy such that the two cannot be reconciled:" Regina *v.* Inhabitants of St. Edmunds, 2 Q. B. Rep. 84. To repeal a statute by implication, there must be a repugnancy between the provisions of the new law and the old so positive as to be irreconcilable: Potter's Dwarris on Statutes 154, n. 4, and the cases there collected. Where a late statute is absolutely repugnant to a former one only in part, it repeals the former one only so far as the repugnancy extends, and leaves all the remainder in force: Van Rensselaer *v.* Snyder, 9 Barb. 308. In many material respects, the Act of 1839 has undoubtedly been modified by the new constitution and the Acts of 1874. Even the proviso to the third section has been affected by the provisions that have fixed the first Monday of January, in lieu of the first day of December succeeding an election, as the date from which commissions shall respectively have force. So far as it has remained unchanged, however, the Act of 1839 has all the controlling efficacy it would have if the constitution of 1873 had not been adopted, and the Acts of 1874 had not been passed.

This cause was decided at the opening of the May term in 1877, mainly on grounds that have been stated in this opinion. Under the order made shortly after the judgment was entered, it has been re-argued at the present term. The appeal from the decree of the Quarter Sessions in favor of Barber, the candidate returned as elected, involving the merits of the contest, has been heard also, and the decree has been this day affirmed. Without looking forward to any eventual effect which that decision may or may not have on the rights of these parties that are involved in this litigation, the present duty of the court simply consists in affirming the judgment they regarded it their duty to enter a year ago.

The judgment of ouster is reversed, and it is ordered and adjudged that judgment be entered in favor of S. W. Trimmer, the defendant in the case stated, with costs.