# Holman's Appeal.

1. Recognizances given in the Orphans' Courts of this commonwealth, in proceedings in partition for the payment of the valuation money of real estate accepted in such proceedings, being directly in the line of title, constitute liens upon the lands accepted, as against subsequent purchasers and mortgagees, notwithstanding the fact that they are not indexed in the judgment index or in some index kept in the Orphans' Court for that purpose.

2. The Act of April 22, 1856 (P. L., 532), requiring judgments, recognizances, sci. fa.'s and executions to be entered in "a book to be called the judgment index," in order to constitute a lien, does not apply to recognizances in partition in the Orphans' Court as above; nor does it require any index in the nature of a judgment index to be kept in the offices of the Orphans' Court.

May 5, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Snyder county:* Of January Term, 1884, No. 51.

Appeal of Michael B. Holman from a decree of said court, distributing the proceeds resulting from the sale of the real estate of William G. Herrold, deceased.

Before the auditor (John A. Cronmiller, Esq.) the following facts appeared: About the year 1850 Abraham Blasser died seised of a large tract of land in Union county.° In 1851 partition was made of said land by the Orphans' Court of Union county, and it was decreed to William G. Herrold, in right of his wife, Mary, one of the heirs of Abraham Blasser. Thereupon Herrold entered into a recognizance with two sureties in the sum of $17,100, to secure the shares of Jacob Blasser and Elizabeth Koerner (formerly Blasser), other heirs of Abraham Blasser.

In 1855 Snyder county was created, by a division of Union county, and the aforesaid real estate was all included in Snyder county.

On August 10, 1877, Wm. G. Herrold and Mary, his wife, executed a mortgage of all their lands, including the above, to

Michael B. Holman. On this mortgage a scire facias was subsequently issued, and judgment obtained for $8,355.66 on September 29, 1881.

On October 31, 1879, Herrold confessed judgment on the recognizance aforesaid in the Court of Common Pleas of Snyder county in favor of the commonwealth suggesting Jacob Blasser, for the use of Mary Herrold, for the sum of $7,462.44; and on November 13, 1879, the same judgment was entered by confession in Union county.

Wm. G. Herrold died intestate on February 10, 1880, seised of several tracts of land which were heavily encumbered. An order was granted his administrator by the Orphans' Court to sell all of said lands for the payment of his debts. Under this order the lands were sold, including six tracts, numbered from one to six, which were the lands covered by the above partition and bound by the recognizance. The sales thus made were confirmed by the court, except as to tract No. 1. Concerning this the administrator returned that it had been sold to Mary Herrold, widow of the decedent, for $6,000, she claiming to be first lien creditor by reason of the judgment on the recognizance above mentioned.

Exceptions were filed to this return, and, upon petition of Michael B. Holman, mortgage creditor as aforesaid, an issue was awarded by the Orphans' Court to ascertain whether this lien of the recognizance had been paid.

In the meantime the administrator filed his account, and, the proceeds of the sales coming before the auditor for distribution, he found, upon the above facts, that the recognizance was a prior lien on said tracts Nos. 1 to 6, which were bound by it, and that the judgment thereon must be first paid out of the fund produced by their sale, subject, however, to the decision of the court upon the said issue awarded to determine whether her lien had been paid.

Exceptions were filed to this report by Michael B. Holman.

Meanwhile the issue awarded to test the validity of the claim of Mary Herrold was settled in her favor.

On motion of Holman, the court then recommitted the report to the auditor to ascertain and report whether the lien of Mary Herrold's recognizance was indexed in the judgment index book in Union county, where it was originally entered, and to make distribution accordingly. As to this, the auditor reported that the proceedings in partition in 1851 had been duly recorded and indexed in the Orphans' Court docket of Union county; that there was no such book as a judgment index book in the office of the clerk of said court, so there could be no entry therein; that the record did not show that

the recognizance was ever certified from Union to Snyder county prior to 1879, nor was it ever entered on the judgment index or lien docket of Snyder county as a recognizance, but only as a judgment on the recognizance, and this only on October 31, 1879; that § 3 of the Act of April 22, 1856 (P. L., 532), provides as follows: "That the lien of no judgment, recognizance, execution levied on real estate in the same or another county, or of writs of scire facias to revive or have executions of judgments, shall commence or be continued as against any purchaser or mortgagee, unless the same be indexed in the county where the real estate is situated, in a book to be called the judgment index, and it shall be the duty of the prothonotary or clerk forthwith to index the same according to priority of date, and the plaintiff shall furnish the proper information to enable him to perform said duty."

The auditor further reported that, in his opinion, this Act applied to recognizances in the Orphans' Court in partition; that the recognizance upon which Mary Herrold's judgment was based, not having been indexed in the county where the real estate was situate, in a book called the judgment index, as required by the Act, had lost its priority, and was not a lien, as against Michael B. Holman, a mortgage creditor.

Mary Herrold filed exceptions to this report, which were sustained by the court, BUCHER, P. J., delivering the opinion, on the ground that the Act of 1856 was inapplicable to Orphans' Court recognizances taken in proceedings in partition, since they are in the line of title, and must be looked for there by judgment creditors and purchasers; and that, therefore, this recognizance was a prior lien as against the Holman mortgage. The court, therefore, entered a decree overruling the exceptions filed to the administrator's special return as to tract No. 1, sustaining the exceptions to the auditor's second report, and directing the fund to be distributed in accordance with the first report. Whereupon Michael B. Holman took this appeal, assigning for error the decree of the court.

*A. C. Simpson* and *B. F. Junkin*, for the appellant.—The title to the Act of April 22, 1856, is, "An act for the greater certainty of title and more secure enjoyment of real estate."

It distinctly sets out that the lien of "no recognizance" shall commence or continue against any purchaser or "mortgagee" unless indexed in the county where the real estate is situated. The only recognizances known to the Court of Common Pleas that could be a lien on land are sheriffs' and coroners' recognizances, and the indexing of these was provided for by the act of April 15, 1834, § 74 (P. L., 551). The Act of 1856 changed the rule that a purchaser is affected with

notice of everything which lies in the line of his title, so that he is no longer compelled to search for liens by judgments or recognizances existing in any court outside of the county where the real estate lies, nor is he to be affected by any judgment or recognizance unless it is indexed in a judgment index book. Unless this Act includes Orphans' Court recognizances, it is practically meaningless, or, rather, a snare to purchasers. That it was intended to embrace such recognizances is manifest from the fact that a failure to index them in the county where the real estate lies does not defeat their lien as to judgment creditors, but as to purchasers and mortgagees only, thus clearly indicating that the lien, in the view of the lawmaker, was of a kind not then requiring to be indexed, and in no other form than by recognizance in the Orphans' Court did such a lien exist—the latter is the only form of record lien which at the time of the passage of the Act was good as against a purchaser or mortgagee, without being indexed.

*Chas. Hower* and *A. W. Potter*, for appellees.—The Act of 1856 has no application to Orphans' Court recognizances, for all the liens mentioned therein are entered in the Court of Common Pleas, including sheriffs' and coroners' recognizances. In the Orphans' Court there are no "judgments," "sci. fa's" or "executions." There is no provision in this Act for certifying a recognizance from the Orphans' Court to the Common Pleas. This would be necessary in order to enter it in a judgment index docket. Both before and since the Act of 1856, it has been decided by this court that an Orphans' Court recognizance taken in proceedings in partition, is in the line of title, and must there be looked for by judgment creditors and purchasers: Kean et. al. *v.* Franklin, 5 S. & R., 155; Hartman's Appeal, 9 Harris, 488; Riddle & Pennock's Appeal, 1 Wright, 181; McCandless' Appeal, 2 Outerbridge, 494; Wetherill v. Warner, 6 Phila. R., 182; DeHaven *v.* Bartholomew, 7 P. F. Smith, 126, and the First National Bank *v.* Cockley, 2 Pearson, 124.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

Independently of the third section of the Act of 22d April, 1856 (P. L. 532), it is not pretended that the recognizance given by an acceptor of land, on proceedings in partition in the Orphans' Court for payment of the shares of the widow and other heirs, is not a lien unless indexed in a docket, or index kept for that purpose. The whole contention in this case for the necessity of such an index, is founded exclusively upon the section of the Act in question.

Its language is as follows: "That the lien of no judgment, recognizance, execution levied on real estate in the same or another county, or of writs of *scire facias* to revive or have execution of judgments, shall commence or be continued as against any purchaser or mortgagee unless the same be indexed in the county where the real estate is situated in a book to be called the judgment index; and it shall be the duty of the prothonotary or clerk forthwith to index the same according to priority of date, and the plaintiff shall furnish the proper information to enable him to perform said duty."

It will be observed that this is not a statute of limitation regulating the time of the continuance of existing liens, and the method of reviving them, but a prohibitory statute denying any effect as a lien to the various judgments and proceedings mentioned, unless the same are indexed as required.

Hence it is that we are now asked to decide, that ever since the Act of 1856 went into effect, in October of that year, recognizances given in the Orphans' Courts of this commonwealth, on proceedings in partition, for the payment of the valuation money of real estate accepted in such proceedings, have not been, and are not, liens upon land accepted, as against purchasers and mortgagees, unless indexed upon the judgment index or some index kept in the Orphans' Court office for that purpose. It is almost thirty years since this Act was passed. It is admitted by the learned counsel for the appellant, that the present question has never before been raised. It is certain that to hold such a doctrine now would disturb, if not destroy, a vast number of titles, would impair the value of liens of this character to an unknown extent, and would practically revolutionize the law upon this subject as commonly understood by the bench and the bar throughout the commonwealth. Nothing short of extreme necessity would justify a court of last resort in taking such a step. Fortunately, no such necessity exists in this case.

The literal terms of the section in question, prohibit lien as against purchasers and mortgagees, to four species of judicial acts or proceedings, viz: (1) judgments, (2) recognizances, (3) executions levied on real estate, and (4) writs of *scire facias* to revive or have execution of judgments, unless the same are indexed as prescribed.

All of these acts and proceedings are within the function, and indeed peculiar, to the Court of Common Pleas, and all save one, are exclusively cognizable and possible in that court. The recognizance is known in the Orphans' Court as it is in the Criminal Courts, but the others are not. But recognizance is also a form of obligation known to the practice of the Common Pleas, and therefore, where it is coupled with other acts

and proceedings of that court, the whole being subject to a regulation common to all, it is not necessary to infer that it is used in any other than its natural, associated sense. The plain and apparent reading of the section is to prohibit lien to certain judgments and proceedings in the Common Pleas except upon certain conditions which also are peculiar to that court. For there is no such book either created by law or established or maintained by practice, as the "judgment index," in any other court than the Common Pleas; and it is in a book of that name that the acts and proceedings mentioned in the section are to be indexed.

It is not known to any member of this court that there is a book called "judgment index," kept in any Orphans' Court office in the state. This Act of 1856, contains no provision specifically directing such a book to be opened or kept in the Orphans' Court, and we can not declare that such a duty to keep such a book in that court arises under the third section, except by inferring it. But there is no ground for such an inference unless we also infer that the word "recognizance" used in the section, *necessarily* includes recognizance in the Orphans' Court. We do not feel able or willing to draw either of these inferences, as all the words of the section, including this one, can be satisfied without doing so.

If it be said that the prothonotary of the Common Pleas must index the Orphans' Court recognizances in the judgment index kept in his office, it is enough to reply that the Act neither gives him the necessary authority to do so, nor directs it as one of his duties.

We cannot resist the conclusion, that if the legislature had intended to make so great and radical a change in the law affecting the lien of Orphans' Court recognizances, as is contended for by the appellant, they would have said so in plain and unmistakable language, and made adequate provision for carrying into effect the consequent changes in the existing practice. For us to do so, would be scarcely short of judicial legislation.

Apart from the considerations thus far presented, it is manifest that the purpose of the third section of the Act of 1856, was to provide a system of liens which would give notice to subsequent purchasers and mortgagees. But in cases of this kind, such notice is amply furnished by the ordinary investigation of title, which all such persons are bound to make in any event. Orphans' Court recognizances, such as this, are directly in the line of the title. They are a part of the very proceedings by means of which title is derived, and cannot be overlooked if the title is really examined. We have said on three distinct occasions, that there is a radical difference be-

tween these liens and those that appear on the record of the
Common Pleas, that the former are in the line of the title,
while the latter are outside.   Thus in Riddle & Pennock's Ap-
peal, 1 Wright, 181, we said:  "The argument is an at-
tempt to apply to liens for owelty of partition in the Orphans'
Court, the principles which govern the liens of judgments in
the Courts of Common Pleas; they are, however, entirely un-
like; the one is in the line of the title, the other is outside.
An Act of Assembly has declared that a judgment docket
shall be kept in the Common Pleas.   This is for the informa-
tion of subsequent lien creditors and purchasers.   No such
requirement exists respecting liens in the Orphans' Court."
The same sentiment was repeated in Bailey *v.* Commonwealth,
5 Wright, 478; and McCandless' Appeal 2 Out., 494.   Other
and obvious considerations might be submitted in support of
the conclusion we have reached, but it is not necessary to
repeat them.   We are of opinion that the case was correctly
ruled in the court below and therefore,

> The decree is affirmed and appeal dismissed at
> the cost of the appellant.