## Lawrence County v. Horner, County Treasurer.

*Public officers—Tax collectors—Compensation—Interpretation of statutes
—Acts of April 15, 1834, April 3, 1851, and May 6, 1854.*

1. It is not the policy of the law of Pennsylvania to require tax collectors to
collect taxes without compensation.

2. Where a special act of assembly has been passed relating to a subject, the
territory to which the special act applies is governed by the special act and so
much of the general law as is not inconsistent with the special act.

3. When the Act of May 6, 1854, P. L. 600, allowed tax collectors to collect 5 per
cent. in the nature of a penalty from delinquent taxpayers as "an additional com-
pensation over and above any amount now allowed by provisions of the original
act," it meant that the same was in addition to the 5 per cent. allowed tax col-
lectors by the general law.

4. An interpretation placed upon a statute by all the parties in interest for a
period of sixty-eight years is "most convincing proof" that this is the true inter-
pretation.

Acts of April 15, 1834, § 52, P. L. 509, April 3, 1851, P. L. 317, and May 6, 1854,
P. L. 600, considered.

Case stated in an action arising out of a surcharge by county auditors.
C. P. Lawrence Co., June T., 1923, No. 19.

*John P. Lockhart*, County Solicitor, for plaintiff.

*A. Martin Graham*, for defendant.

EMERY, P. J., Aug. 13, 1923.—Originally this case was an appeal by the
county treasurer from a surcharge against him, made by the county auditors
in their report filed April 2, 1923. The case now has the form of a case stated.
The facts agreed upon are as follows:

"1. C. Lee Horner was County Treasurer for the County of Lawrence dur-
ing the calendar year of 1922, and is now County Treasurer of Lawrence
County.

"2. During the year 1922, C. Lee Horner, as County Treasurer of said
Lawrence County, allowed commissions to constables and tax collectors of
State and county taxes in said county, amounting to $4437.37, of which the
sum of $293.40 was allowed as commissions upon taxes from which the con-
stables and tax collectors were exonerated, and the balance, to wit, $4143.97,
was allowed as commissions upon State and county taxes actually collected
by the constables and tax collectors.

"3. Such commissions were allowed at the rate of 5 per cent. on the face
of the tax delivered by the county treasurer to such constables and tax col-
lectors for collection.

"4. The constables and tax collectors, in the collection of State and county
taxes for the County of Lawrence during the year 1922, added a penalty of
5 per cent. to the face thereof after Sept. 1, 1922, which penalty was collected
and retained by them, and the commissions allowed by said county treasurer,
as above stated, were allowed as additional compensation for the collection of
such tax.

4 D. & C.

"5. By the Act of Assembly approved April 3, 1851, P. L. 317, applicable to Venango County, the county treasurer was made collector of taxes and was authorized to deliver to the constables of the several townships and boroughs the taxes unpaid Sept. 1st in each year for collection. By the Act of Assembly approved March 27, 1852, P. L. 197, the said act was extended to the County of Lawrence, together with other counties, and by the Act of Assembly approved May 6, 1854, P. L. 600, it was provided that the constables and tax collectors of the counties operating under said special acts should add a penalty to all taxes in their hands on or after Sept. 1st in each year, and collect the same along with the face of the tax and retain such penalty as their compensation, in addition to the compensation provided by the original act.

"6. The Auditors of the County of Lawrence, by their report filed April 2, 1923, surcharged C. Lee Horner, Treasurer of said County of Lawrence, with the sum of $4471.75, being commissions paid to constables and collectors of taxes of 5 per cent. on exonerations and 5 per cent. on all other taxes collected by said constables and tax collectors. The amount of such surcharge, if a valid surcharge, it is now agreed should have been $4437.37.

"7. It is agreed as a fact that the County Treasurers in the County of Lawrence have made allowances to constables and tax collectors of commissions upon the same basis as was done by C. Lee Horner, County Treasurer, in this matter continuously since 1854."

There is not and can be no dispute that the compensation for the collectors of delinquent taxes that is provided for in the local Act of May 6, 1854, P. L. 600, was "an additional compensation over and above any amount" which they were allowed at the time of the approval of said Act of May 6, 1854, P. L. 600.

The plaintiff contends that under the Act of April 3, 1851, P. L. 317, the collectors of delinquent taxes were not allowed any compensation for their services as collectors, except in cases where they were required to distrain, and then only if the amount of the sale exceeded the amount of the taxes. Said Act of April 3, 1851, P. L. 317, originally applied only to Venango County, but it was extended to Lawrence County by the Act of March 27, 1852, P. L. 197. The position of the plaintiff is that after March 27, 1852, and prior to May 6, 1854, the collectors of the delinquent taxes in Lawrence County were required to perform their services without any compensation, except the fees that they might charge in cases where it became necessary to distrain, and even in such cases they were not allowed those fees unless the amount of the sale exceed the amount of the taxes. If this position is sound, then judgment ought to be entered in this case for the plaintiff and against the defendant.

The "rule of reason" is always a factor in the interpretation of a law; and in some cases, in the light of the history of the legislation, "the rule of reason becomes the guide." "This is true, because as the construction which we have deduced from the history of the act and the analysis of its text is simply that in every case where it is claimed that an act or acts are in violation of the statute, the rule of reason, in the light of the principles of law and the public policy which the act embodies, must be applied:" Per White, C. J., in Standard Oil Co. *v.* United States, 221 U. S. 1 (66).

The above certainly means that an interpretation should not be put on an act that makes it require an unreasonable thing, unless the terms of the act itself prohibit any other interpretation.

This is a doctrine of law not unknown in Pennsylvania. In Riley *v.* Pennsylvania Co., 32 Pa. Superior Ct. 579 (585), the Superior Court says: "We

are not unmindful of the principle that where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent, and that it matters not, in such a case, what the consequences may be. But it is equally true that the manifest injustice, the hardship or inconvenience that would result from one possible interpretation of the words may be considered, amongst other things, in determining the legislative intent, where the words are as plainly open to an interpretation that would lead to a different result and still not defeat the general purpose of the enactment."

Is it reasonable to interpret the Act of 1851 so as to require the constables of Venango County to collect the delinquent taxes, and give bond with sureties to perform said duties faithfully, and allow them no compensation at all for their services, except the uncertain cases where they distrain and the amount of the sale exceeds the tax? If that is the true interpretation of the Act of 1851, its title ought to be, "An act to punish the constables in Venango County."

The interpretation insisted upon by the plaintiff is so much at variance with "the rule of reason," in the light of the principles of law and the public policy of the State of Pennsylvania, that it ought not to be adopted unless all other interpretations are prohibited by the act itself.

It is not the policy of the courts of Pennsylvania to interpret laws so that they will require tax collectors to perform their duties without compensation. In Buckwalter v. Lancaster, 12 Pa. Superior Ct. 272 (277), the Superior Court, in discussing the effect of certain legislation on the right of tax collectors to compensation, say: "What follows? Either that the collector is entitled to no compensation whatever or that it is regulated by the Act of 1885. It is not supposable that the former result was contemplated by the legislature, but if, through inadvertence, they failed to provide against its happening, it is not the province of the courts to supply defects and omissions in the legislation. We do not think, however, that we are driven to the alternative of holding that the repeal of the local law left the collectors in these townships without the right to compensation."

The Act of April 3, 1851, P. L. 317, requires no such interpretation as that insisted upon by the plaintiff.

Interpreting the Act of 1851 in the light of "the old law, the mischief and the remedy," it is not necessary to give it an interpretation at variance with "the rule of reason, in the light of the principles of law and the public policy" of the State of Pennsylvania. It is not necessary to give it the interpretation insisted on by the plaintiff.

When the Act of April 3, 1851, P. L. 317, was approved, it was the settled policy of the State of Pennsylvania to pay the tax collectors well for their services. Under the general law of April 15, 1834, § 52, P. L. 509, the tax collectors were paid 5 per cent. of all moneys collected. When one considers what 5 per cent. of all the county taxes would amount to, it becomes apparent that the position of tax collector was one to which was attached liberal compensation.

When the Act of 1851 was approved, the old law was that the tax collector got 5 per cent. on *all* taxes. The mischief was that the taxpayer who was ready and willing to pay his taxes had to pay it to a collector who took 5 per cent. of it for doing the thing that the taxpayer was ready and willing to do. In other words, if a taxpayer's taxes were $100, and he wanted to pay them, the county only got $95 out of the hundred which he paid. If he could go himself to the county treasurer and pay his taxes with the same $95 that the

4 D. & C.

Lawrence County v. Horner, County Treasurer.

county would have gotten from the collector, surely that would be a system "to reduce the expenses of collecting State and county taxes in the County of Venango," as far as that taxpayer was concerned. The remedy was to supply a system whereby the county would be none the worse off, and the expenses of collecting the taxes would be reduced to the taxpayer who desired to take advantage of it.

It really was the taxpayer that paid the commission to the tax collector. The county did not pay it as distinct from the taxpayer, for the very good reason that the county has no funds except those derived from taxation.

Let us compare two townships in each of which the county tax is $10,000. The first is under the Act of 1834. The collector collects every cent of the tax. The county gets $9500. The second is under the Act of 1851. The taxpayers all pay their taxes "on or before the first day of August." The county gets $9500, which was the exact cent it got in the other case. There has been a saving of $500, but it is not to the county as a municipal corporation, but to the taxpayers. The picture I have drawn is an ideal working of both systems. If in an ideal case the Act of 1851 saves nothing for the county as a municipal corporation, but does save for the taxpayers, then the title to the Act of 1851 certainly means "to reduce the expenses [to the taxpayers] of collecting State and county taxes in the County of Venango," etc.

What does the Act of 1851 say about the compensation of tax collectors that would compel an interpretation of it at variance with "the rule of reason, in the light of the principles of law and the public policy" of the State of Pennsylvania, as evidenced by the Act of 1834?

The Act of 1834 (section 21) provides for distraint "to satisfy the same [the taxes], *with the costs*," and the Act of 1851 provides the same thing, except that it is a little more specific as to how "the costs" are to be computed. The Act of 1851 says nothing else about the compensation of the tax collectors.

It is a well settled principle of law that one statute does not repeal a prior statute except by express words or by necessary implication. Indeed, the courts have held that repeals "by implication" are not favored, and they go even so far as to say that the provisions of a former statute are not repealed by a later statute "by implication" unless the provisions of the second are totally repugnant to the first: Com. v. Vetterlein, 21 Pa. Superior Ct. 587 (590); Erie v. Bootz, 72 Pa. 196; Philadelphia v. Miller, 42 Pa. Superior Ct. 471; Jackson v. Pennsylvania R. R. Co., 228 Pa. 566; Long v. Phillips, 241 Pa. 246; Schuylkill Haven v. Church, 62 Pa. Superior Ct. 413.

An earlier statute is repealed by a subsequent statute only in those particulars wherein it is clearly inconsistent and irreconcilable with the later enactment: Com. ex rel. v. De Camp, 177 Pa. 112; S. D. & T. Co. v. Fricke, 152 Pa. 231; McHenry's Petition, 6 Pa. Superior Ct. 464; Hendrix's Account, 146 Pa. 285.

"Where a late statute is absolutely repugnant to a former one only in part, it repeals the former one only in so far as the repugnancy extends, and leaves all the remainder in force:" Barber's Case, 86 Pa. 392 (400).

At the time of the passage of the Act of 1851, the law was that tax collectors got 5 per cent. for their compensation. There is not a word in the Act of 1851 on the subject of compensation for tax collectors for the ordinary collection of the delinquent taxes. How, then, can it be said to repeal that part of the Act of 1834 which covers the subject? Attention is called to the repealing clause of said Act of 1851. This is found in section 11, and the only words in that section germane to the point now under discussion are: "So much of any law as is hereby altered or supplied is hereby repealed, so far as

relates to the County of Venango." These words in themselves imply that this act does not repeal all laws on the subject of the collection of taxes. The 52nd section of the Act of 1834 is not altered or supplied by anything in the Act of 1851. The Act of 1851, therefore, does not repeal the said 52nd section of the Act of 1834 by express words.

We have seen by the authorities above cited and quoted from that a later statute does not repeal an earlier statute "by implication," except in cases where the later statute is totally repugnant to the former statute, and that this repeal extends only "so far as the repugnancy extends, and leaves the remainder in force." Is this true when the later statute is a special or local statute? In the next two paragraphs we expect to show how the Supreme Court has answered that question.

The Special Act of Feb. 12, 1869, P. L. 150, has a repealing clause in the 67th section (page 163). That section reads: "All laws or parts of laws inconsistent with this act are hereby repealed, so far as the same relate to the City of Pittsburgh." This act is a very elaborate act, providing a system of government for the public schools of the City of Pittsburgh. Yet the Supreme Court, in Com. v. Peder, 208 Pa. 28 (29), says: "The school districts of the City of Pittsburgh are governed by the Special Act of Feb. 12, 1869, P. L. 150, and so much of the General School Law of 1854 as is not inconsistent with the special act."

In Mead Township v. Couse, 156 Pa. 311 (314), the Supreme Court, in discussing the effect of a special law on a prior general law, say: "The 14th section of the Act of 1848 provided 'that the existing road laws of this Commonwealth, so far as they are supplied or altered by this act, be and the same are hereby repealed, so far as relates to Warren, Venango and McKean Counties.' Of course, in all respects in which the road laws were not supplied or altered by the Act of 1848, they still remain in force in those counties." The entire opinion of the Supreme Court in this case is very illuminating to any one making a study of this subject.

In a system which allows a willing taxpayer to pay his taxes to the county treasurer, and thereby save for himself the commission of the collector, there is not, of necessity, anything totally repugnant to the law which allows the collector 5 per cent. of the tax as his compensation, if, as a matter of fact, he has to go out and collect it, the same as other tax collectors do in the collection of taxes. Therefore, the Act of 1851 does not repeal the 52nd section of the Act of 1834 by implication. The said Act of 1851 not repealing the 52nd section of the Act of 1834, either by express words or by implication, it does not repeal it at all.

After the Act of 1851 was passed, what, then, was the "old law, the mischief and the remedy?"

In counties subject to the Act of 1851, the then old law was that all the cream had been skimmed off the tax collector's job. Instead of getting 5 per cent. for collecting all the taxes, both good and bad, he now got only 5 per cent. for collecting the bad.

The mischief was that proper tax collectors could not be obtained on these terms. It is common knowledge, known alike to the court and to every other informed person, that the county commissioners have great trouble getting suitable tax collectors for the delinquent taxes in this county now under the system which has been in use in this county continuously since 1854. By this system the tax collectors, for collecting the delinquent taxes, have received the 5 per cent. provided for in the 52nd section of the Act of 1834, and the additional 5 per cent. provided for in the Special Act of May 6, 1854, P. L. 600.

4 D. & C.

Yet it is common knowledge that tax collectors of the proper kind are hard to get on these terms, and small wonder it is, for they have nothing to work on but delinquents.

The remedy was the Act of May 6, 1854, which allowed the tax collectors, if they wished to do so, to charge the taxpayer who was delinquent an additional 5 per cent. and retain the same as "an additional compensation over and above any amount now allowed by provisions of original act."

What was the "original act" referred to in the said Act of 1854? Unquestionably the Act of April 3, 1851, P. L. 317. What, then, was the compensation "allowed" the collectors of delinquent taxes by the provisions of the Act of April 3, 1851, P. L. 317? Note that the Act of May 6, 1854, P. L. 600, says "allowed," and does not say "provided for in" or "fixed by" the original act, or any other similar expression. The word used is the word "allowed." The 52nd section of the Act of 1834 being in force in Lawrence County when the Act of April 3, 1851, P. L. 317, was extended to Lawrence County, and the said section of the Act of 1834 not being repealed by said Act of 1851, either by express words or by implication, then it follows that the "any amount now allowed by provisions of original act" referred to in the Act of May 6, 1854, P. L. 600, was the 5 per cent. provided for in said 52nd section of the Act of 1834. The Act of 1851 did not prohibit the payment of this commission to the tax collectors; it did not repeal the section of the Act of 1834 that provided for its payment; the framers of the Act of May 6, 1854, P. L. 600, were very precise in the selection of a word when they selected the word "allowed" to express their meaning. That is exactly what the said Act of 1851 did; it allowed the payment of this 5 per cent., for the payment of which it is now proposed to surcharge the defendant in this case. This interpretation of the Act of May 6, 1854, P. L. 600, gives meaning to every word in that act, including the words that the so-called penalty should be "an additional compensation over and above any amount now allowed by provisions of original act," all of which would be meaningless if the original act allowed no compensation.

Much stress was laid by counsel for the plaintiff on the provisions of said Act of 1851, which require the tax collector to pay over all the taxes collected by him to the county treasurer, and the conditions of his bond requiring him to do the same thing.

The force of this argument abates when one examines the provisions of the Act of 1834 relating to the same matters. The 49th section of the Act of 1834 requires the tax collectors to pay to the treasurer "the whole amount of the taxes;" and the 43rd section of the same act provides that the condition of his bond shall be, among other things, that he shall "pay over, or account for, according to law, the whole amount of the taxes charged." There is no essential difference between these provisions of the Act of 1834 and the provisions of the Special Act of April 3, 1851, P. L. 317, relating to the same matters.

What has been said disposes of the surcharge for $4143.97, as set out in the case stated, being for commissions paid for taxes that were actually collected by the several constables and tax collectors. This is the interpretation placed on these statutes by every county treasurer, every county solicitor, every board of county commissioners, and every board of county auditors in this county since 1854, until April 2, 1923, and it is the correct interpretation.

We now come to the question of whether or not the defendant should be surcharged with the sum of $293.40, which was commissions allowed the collectors on exonerations, which exonerations had been made by the county commissioners.

We have tried to state this question with precision. The question is not what we might have advised the county treasurer was the law, had we been in a position to do so and had been asked for advice by the county treasurer in 1854. Neither is it a question of what we think the county treasurer ought to do in the future. The defendant, in the year 1922, in this matter followed the practice that had been followed by himself and by his predecessors in office and approved by the county auditors, including the present board of county auditors, for a period of sixty-eight years. The question now is: Should the defendant be surcharged for interpreting these statutes in the way they have been interpreted by everybody concerned for eighteen years more than half a century? We are not prepared to answer this question in the affirmative.

As long ago as 1859, the Supreme Court, in Com. v. Nesbit, 34 Pa. 398, in speaking of the interpretation of a certain statute, said (page 410): "The most convincing proof that this is the true interpretation of the law is that it has been always so understood."

Again, in Holman's Appeal, 106 Pa. 502 (506), the Supreme Court said: "It is almost thirty years since this act was passed. It is admitted by the learned counsel for the appellant that the present question has never before been raised. It is certain that to hold such a doctrine now would disturb, if not destroy, a vast number of titles, would impair the value of liens of this character to an unknown extent, and would practically revolutionize the law upon this subject as commonly understood by the bench and bar throughout the Commonwealth. Nothing short of extreme necessity would justify a court of last resort in taking such a step."

In Price v. Lancaster County, 189 Pa. 95, the Supreme Court went so far as to hold that a contemporary interpretation of the words used in an act of assembly would be applied to the same words when used in a new act of assembly on the same subject, even though such interpretation might not seem the interpretation that the court might now adopt in the absence of such former contemporary interpretation.

In Com. v. Paine, 207 Pa. 45, the Supreme Court again held that a contemporary interpretation is always significant of the true meaning of an act of assembly. On page 48 the Supreme Court said: "If, in the opinion of lawyers and the people interested who lived at the time and were closely affected by the legislation, it had a particular meaning out of several possible ones, courts in later years will be slow to adopt another, even though they might not, on a perusal of the acts, be inclined to concur in the contemporary interpretation."

We do not say that the county treasurer ought again to allow commissions on exonerations, but we do say that in all equity, right and justice this defendant ought not to be surcharged for doing what it had been the practice to do for sixty-eight years, and this is more especially true when one considers that the board of county auditors that have now surcharged him have approved like payments by this defendant during the three preceding years of his term of office. This disposes of the whole case.

Now, Aug. 13, 1923, by the authority given in the case stated, the court being of opinion that C. Lee Horner, treasurer, is entitled to credit for the commissions allowed to constables and tax collectors, as set out in the case stated, judgment is hereby given for the defendant, and the prothonotary is hereby directed to enter the same.

Now, Aug. 13, 1923, an exception is hereby sealed to the above judgment for the plaintiff.

From William McElwee, Jr., New Castle, Pa.