## Erie *versus* Bootz.

1. Implied repeals are not favored.   If two statutes can stand together, the latter does not abrogate the former.

2. The whole course of legislation is to be so construed that every part and word shall have its effect, if it consistently can, and the will of the legislature be completely executed.

3. An Act in 1861 authorized city councils to improve streets, and levy the cost on owners of property on the streets, but such improvement should not be ordained except on the petition of a majority of the property-owners on the street to be improved.   A section of an Act in 1864 gave councils power to ordain improvements by a vote of two-thirds, without petition, &c.   *Held,* the last act did not repeal the first.

4. By an Act in 1868 councils could improve whenever a majority of owners, &c., should petition, "and not otherwise," except when the ordinance for the improvement should order the payment from the city funds. This act repealed the section of the Act of 1864.

5. The Act of 1861 provided that if notice were given by publication, &c., of the improvement prayed for, the question whether a majority of owners had petitioned should "cease" after the passage of an ordinance for improvement.   This was not repealed by the Act of 1868.

6. A petition was presented to the councils asking for improvement of a street; notice of it was given in the official paper; a committee of councils reported that a majority of owners desired the improvement, the councils then ordained the improvement.   *Held,* that this action was conclusive.

October 22d 1872.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Erie county :* No. 137, to October and November Term 1871.

This was a scire facias on a lien for a municipal claim issued February 26th 1870, by the city of Erie against a piece of land fronting on Peach street, and Jacob Bootz owner.   The lien

[Erie v. Bootz.]

was for the amount assessed for making a pavement in Peach street. The city of Erie was incorporated by Act of May 1st 1861.

Sect. 1. Authorizes the city councils "to cause to be graded, paved, macadamized, repaired or otherwise improved, any public street or part thereof, which is now or may hereafter be laid out and opened in said city, and have the said street, or part of street, set with curbstone; and * * to provide, by ordinance, for the levy and collection of the cost and expense of work and materials used therefor, from the owners of the property bounded by and abutting on said street, or part of street, by an equal assessment on said property in proportion to the number of feet the same fronts on said street, or part of street: *Provided,* That said councils shall not order any street, or part of street, to be paved, graded, macadamized or set with curbstone, except upon the petition of a majority of the persons holding or owning property on said street, or part of street, so proposed to be graded, macadamized or set with curbstone.

"Sect. 2. When the said councils shall, by ordinance, direct the grading, &c., the question whether a majority of persons holding or owning property thereon have petitioned therefor, shall cease and determine: *Provided,* That no ordinance for any of the above-named purposes shall be passed, until —— days' notice of the improvement prayed for has been given in the official paper of the city."

The charter was amended April 30th 1864, which provided,

Sect. 15. That the said councils shall have power to order the paving of any street, or part of street, in said city by a vote of two-thirds of the members elected to each council, without the petition, or proceedings thereon, now required by the acts relating thereto.

A further supplement of April 2d 1868 provides:—

Sect. 13. That the mayor and councils shall have the power to construct sewers along any of the squares or blocks of the streets of the said city, and make pavements on the same, whenever the majority of the owners of property on both sides and facing said streets shall petition for the same, and not otherwise, except when the ordinance directing the same shall provide for payment of the cost thereof out of the general funds of the city.

Sect. 15. So much of any Act of Assembly as conflicts with the foregoing act, is hereby repealed.

The cause was tried, April 4th 1871, before Wetmore, P. J.

The plaintiff gave in evidence:—

Petition of citizens on Peach street for paving that street which was referred to a committee of each council, May 11th 1868; publication May 12th of these proceedings in the "Erie City Dispatch," the official paper of councils; report of the committees May 25th that a majority of owners of real estate on Peach street were in favor of the pavement; ordinance June 2d, directing paving of

[Erie *v.* Bootz.]

Peach street and the assessment of the cost on the owners of the real estate fronting on the street: publication of subsequent proceedings of councils in relation to the pavement.

Plaintiff gave evidence also of the cost of the pavement, the assessment on defendants' property, demand of payment from defendant and entry of lien, amounting to $527.10; and rested.

The defendant offered evidence for the purpose of showing that the petitions for paving did not contain a majority of owners of property.

This offer was objected to by plaintiff, admitted by the court and a bill of exceptions sealed.

He then gave evidence in accordance with his offer.

The plaintiff submitted these points which were refused :—

2. The city councils being a legislative body, the presumption of law is, that all the law requires to be done, has been done that related to the enactment of ordinances and the levying of taxes for municipal purposes.

3. The defendant and others having failed to take the proper and necessary steps, as provided by law, for remonstrating against the enactment of the ordinance for the pavement of Peach street, he is now estopped from denying that a majority of the property-owners did sign the petition asking for the passage of said ordinance for the purpose aforesaid.

4. The defendant cannot, after having filed a plea in bar, take any advantage of any irregularities in the filing of the lien. The same should be taken advantage of by motion to strike off lien, or by demurrer.

5. The defendant enjoying all the advantages arising from said improvement, and having neglected to put the city authorities on their guard in the manner provided by law, cannot at this late date under the pleadings, claim that the ordinance for paving said street, was irregularly enacted.

6. The reputed owner of property and in possession, on and along a street, would have the right to sign a petition for the paving of said street, and it would not be incumbent on the plaintiff to show actual title in the party so signing.

7. The title of property being in the wife, the law treats the husband as her agent, and any agreement made by him for the improvement of her estate, would be binding on her. More especially if while said improvement is going on, she quietly acquiesces in the same and gives the party no notice.

The defendant submitted these points which were affirmed :—

1. To give the councils jurisdiction of the subject-matter, the petition asking for the making of the pavement, must be signed by a *majority* of the persons holding or owning property on that part of the street proposed to be paved. If the jury find from the evidence that said petition was not signed by a majority of per-

[Erie v. Bootz.]

sons holding or owning property on Peach street, between the north side of the Public Square and Fifteenth street, the plaintiff cannot recover.

2. If the jury find from the evidence that there are the names of persons on the petition, in whom there was not, at the time of signing any estate in fee simple, fee tail, for life, or a perpetual leasehold, or for a term of years, by lease or otherwise, not less than for twenty years, such names, if any, must be excluded from the count.

4. If the jury find that there was not a majority of the persons holding or owning property on Peach street between the north side of the Public Square and Fifteenth street, signed the petition for the making of said pavement, the council had no jurisdiction and all their action in the premises was null and void.

The verdict was for the defendant. The plaintiff took a writ of error, assigning for error, the denial of plaintiff's points and the affirmance of the defendant's.

*J. R. Thompson* and *J. H. Walker* (with whom was *E. Babbitt*), for plaintiff in error.

*C. B. Curtis* and *J. C. Marshall* (with whom was *F. F. Marshall*), for defendants in error.

The opinion of the court was delivered, October 28th 1872, by SHARSWOOD, J.—The question presented for our determination upon this record lies within a very narrow compass. The general principles of the law upon the subject of the implied repeal of statutes are well settled by the decisions, and indeed are not in dispute. Implied repeals are not favored. If two statutes can stand together, the posterior does not abrogate the prior. This is indeed but the application of a general canon of interpretation— that the whole course of legislation, like the whole of a deed or other instrument of private parties, is to be so construed that every part and every word shall have its effect, if it consistently can, and thus the will of the legislature be completely carried into execution. It follows clearly that the Act of April 10th 1864, Pamph. L. 672, repealed no part of the Act of May 1st 1861, Pamph. L. 614. Under these two acts there were two modes provided by which streets in the city of Erie could be ordered to be paved by the municipal authorities: First, upon the petition of the majority of the owners of property fronting on the street, according to the Act of 1861, and second, by a vote of two-thirds of the members of each branch of the councils, by the Act of 1864, without any petition. Both these modes were then subsisting, when the Act of April 2d 1868, Pamph. L. 610, was passed, which provided that the mayor and councils should have power * * * to make pavements

[Erie *v.* Bootz.]

\* \* \* whenever the majority of the owners of property on both sides and facing the streets should petition for the same, and not otherwise ; except where the ordinance directing the same should provide for payment of the cost thereof out of the general funds of the city. This section was certainly repugnant to and therefore repealed the provision of the Act of 1864 on the subject, unless perhaps where the exception applied, which it is not necessary now to decide. Had this section been without the words " and not otherwise," it would scarcely have admitted of a doubt that its meaning was simply that no street should be paved except upon a petition of a majority of the owners, according to the Act of 1861. It makes no provision for the assessment of the cost upon the owners. It is not to be supposed that the provisions of the Act of 1861 as to that were intended to be repealed, and that while a petition of the majority of the owners was required, the cost was to be paid out of the treasury by taxation at large. We cannot see, therefore, that the words "not otherwise " have any such controlling effect. If this be so, which indeed has not been controverted, did these words *ex necessitate* operate to repeal the second section of the Act of 1861, which declared that upon the passage of an ordinance for paving any street " the question whether a majority of persons holding or owning property thereon have petitioned therefor, shall cease and determine ?" We think not. It is to be observed that this section was modal merely, in fact a part of the proceedings under the act—as much so as the third section, which defined who should be regarded as owners of property. It was not only important that this should be settled, but that the question of the numbers should be conclusively determined before the expense of the improvement should be incurred. If it were left open for contest, no street could be paved without leading to a controversy upon the subject. With this view public notice was provided for, so that all who had an interest might have an opportunity to be heard, and the decision of the councils was made final and conclusive.

Judgment reversed, and *venire facias de novo* awarded.