# The Citizens Electric Illuminating Company v. The Lackawanna and Wyoming Valley Power Company, Appellant.

*Corporations—Public service corporations—Electric companies—Sphere of operation—Contracts with similar companies—Act of March 19, 1903, P. L. 34—Equity—Injunction.*

1. When the charter of an electric company indicates where the company may be located, the company can exercise its franchise

only in the municipal division in which it is located, or territory adjacent thereto.

Bly v. White Deer Mt. Water Co., 197 Pa. 80, followed.

2. Implied repeals of statutes are not favored. If two statutes can stand together the later does not abrogate the earlier.

3. The Act of March 19, 1903, P. L. 34, authorizing electric companies to enter into contracts with each other for the use of the same poles, wires and conduits or for the purchase and sale of electrical current, or for the operation of each other's plants upon such terms and conditions as they may agree upon, does not authorize an electric company to supply another company occupying nonadjacent territory with electric power. The said act authorizes such contracts only between companies, both of which are authorized to supply the territory in question.

4. Where an electric company authorized to supply a certain territory with electricity attempts without authority of law to supply electricity in another territory, an electric company authorized to supply that territory with electricity has standing in equity to maintain a bill to restrain such invasion of its territory, although its franchise is not an exclusive one.

5. An electric company authorized to supply a certain territory with electricity entered into a contract with another company, chartered to supply a nonadjacent territory with electricity but without plant of its own, to supply such company with electric current. A third company, having a nonexclusive franchise to supply the same territory with electric current and having a plant located therein, brought a bill in equity to enjoin the first company from supplying the second company with electric current. The lower court awarded the relief prayed for. *Held,* no error.

Argued April 11, 1916. Appeal, No. 62, Jan. T., 1916, by defendant, from decree of C. P. Luzerne Co., March T., 1915, No. 6, in equity, awarding an injunction, in case of The Citizens Electric Illuminating Company v. The Lackawanna and Wyoming Valley Power Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before STRAUSS, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction as prayed for. Defendant appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and law and the decree of the court.

*H. B. Gill* and *William I. Schaffer,* with them *Richard B. Sheridan* and *W. B. Linn,* for appellant.—The plaintiff has no standing in equity to maintain the bill: Myersdale & Salisbury St. Ry. Co. v. Penna. & Md. St. Ry. Co., 219 Pa. 558; North Penna. R. R. Co., et al., v. Inland Traction Co., et al., 205 Pa. 579; Pinkerton v. Penna. Traction Co., 193 Pa. 229; Penna. R. R. Co. v. Greensburg, Jeannette & Pittsburgh St. Ry. Co., 176 Pa. 559; Coatesville & Downingtown St. Ry. Co. v. Uwchlan St. Ry. Co., 18 Pa. Superior Ct. 524.

Under the Act of March 19, 1903, P. L. 34, the defendant was authorized to contract with the Jenkins Township Electric Light, Heat and Power Company for the supply of electric current to that company: Hey v. Springfield Water Co., 207 Pa. 38; Moore v. Chartiers Valley Water Co., 216 Pa. 457.

*Benjamin R. Jones,* for appellee.—The defendant is not authorized by its charter to supply electric current in the Township of Jenkins: Annexation to Camp Hill Boro., 142 Pa. 511; Bly v. White Deer Mountain Water Co., 197 Pa. 80; Brown v. Radnor Township Electric Light Co., 208 Pa. 453; In re Home Electric Co., 29 W. N. C. 383.

The defendant was not authorized by the Act of March 19, 1903, P. L. 34, to furnish electricity in the Township of Jenkins: Young v. York Haven Electric Transmission Co., 15 Pa. D. R. 843; Del., Lack. & Western R. R. Co. v. Welser, 233 Pa. 154.

Under the Act of June 19, 1871, P. L. 1360, plaintiff has standing in equity to maintain this bill: Commonwealth v. Pittsburgh & Connellsville R. R. Co., 24 Pa. 159; Blauch v. Johnstown Water Co., 247 Pa. 71; Myersdale v. Salisburg St. Ry. Co. v. Penna. & Md. St. Ry. Co., 219 Pa. 558.

OPINION BY MR. JUSTICE STEWART, October 2, 1916:

The plaintiff, the Citizens Electric Illuminating Company, has been for years engaged in developing electricity and supplying light, heat and power to the public in the Township of Jenkins in the County of Luzerne. Within the same territory exists another electric company, the Jenkins Electric Light, Heat and Power Company, chartered for like purpose, but later, which has as yet constructed no plant for the production of electricity, and has no present purpose of constructing such plant. This latter company can therefore operate only as it can purchase an electric current from some outside source with which to supply customers. The defendant company, the Lackawanna and Wyoming Valley Power Company, in the exercise of its charter privileges, is and has been for years engaged in developing electricity in the City of Scranton, and supplying light, heat and power to the public in the City of Scranton, and to persons, firms and corporations residing in the territory adjacent thereto, one of its customers being the Lackawanna & Wyoming Railroad Company, a corporation owning and operating a line of railroad between the City of Scranton and Wilkes-Barre, extending through Jenkins Township, and using electricity for its motive power. No complaint is made that the latter company has, so far, transcended its charter powers and privileges; but the Jenkins Township Company, with a view to escape the burden of producing its own electricity, and the Scranton Company, with a view to utilize power which it is capable of producing beyond its present demand, were about to enter into a contract whereby the Scranton Company, for a fixed consideration, would furnish to the Jenkins Township Company, sufficient electricity to enable the latter company to operate in Jenkins Township and supply the public with light, heat and power. The bill was filed by the Citizens Electric Illuminating Company to restrain the Scranton Company from doing or performing electric service and lighting within the territory of Jenkins

Township until it should obtain a charter to do the act threatened.   A preliminary injunction was awarded, which, after answer filed and hearing, upon the evidence submitted was made perpetual.   The appeal raises two questions: First, has the plaintiff company standing to maintain its bill?   Second, does the Act of March 19, 1903, P. L. 34, contemplate and authorize such a contract as is here proposed between the Lackawanna company and the Jenkins Township company?   While other questions are raised by the several assignments of error, we are relieved from the consideration of these by the admission on the part of appellant that the two above specified are governing in the present controversy.   The first can be answered only as the second shall have been determined, for reasons which will appear later, and the second, therefore, calls for the earlier consideration.

The enacting clause of the Act of March 19, 1903, reads as follows: "Be it enacted, etc., That it shall and may be lawful for corporations, for what purpose soever formed, and lawfully using electrical current, within this Commonwealth, to enter into contracts with each other for use of the same poles, wires and conduits, or for the purchase and sale of electrical current, or for the lease and operation of each other's systems, upon such terms and conditions as they may agree upon: Provided, That nothing in this act contained shall be construed to give any company any rights to erect or maintain poles, wires or conduits upon any street or road not already so occupied, unless the consent of the local authorities shall have been first obtained."

Except as this statute confers the right appellant contends for, namely, the right to supply light, heat and power by means of electricity to the public beyond the City of Scranton and territory adjacent thereto, such right does not exist.   We need waste no time attempting to make good so plain a proposition.   We do not understand that it is contested.   The decision in Bly v. White Deer Mt. Water Co., 197 Pa. 80, is conclusive on the

point. What is there said with respect to water companies applies with equal force to electric companies, the only distinction between the two, as to the privileges conferred, being, that while the former are restricted to furnishing water to the town, borough, city or district where they may be located, to the latter is given a further privilege of furnishing light, heat and power to persons, firms or corporations residing in territory adjacent to the place where the company is located. The difference is without significance here, for what is sought to be restrained in the present proceeding is not the furnishing of light, heat and power by appellant company in the place where it is located by its charter, the City of Scranton, or in territory adjacent to the City of Scranton, but in the Township of Jenkins, which is not only not adjacent to the City of Scranton, but is eleven miles distant from that city's limits, four boroughs and two townships intervening, as well the City of Pittston. The language and logic of the opinion in the case cited has manifest applicability here, for the reason that the rule there settled is, that when the charter of the company indicates where the company may be located, the company can exercise its franchise only in the municipal or quasi municipal division in which it is located. We quote from the opinion filed: "The Act of April 29, 1874, P. L. 73, authorized the formation of water companies for the purpose of supplying water to the public. But this was not the extent of the legislative enactment. The act went further and defined the powers of such companies so explicitly that they need and should not be misapprehended. The act provides that water companies incorporated under its provisions shall have the power to supply water in 'the town, borough, city or district where they may be located.' This language clearly and expressly limits the authority of a water company to the municipal or quasi municipal division in which it is located. It can exercise its corporate functions in only a single territorial division, and that division is where it

'may be located.' Such is the plainly written command of the statute and it will permit of no other reasonable construction. The word 'district,' used in the act, having no qualifying adjective to indicate its extent or meaning, is not to be construed as extending the territorial limits in which the corporation may supply water beyond those given it by the prior words used in that connection. It may embrace a township or a part of one of the political divisions mentioned immediately preceding it, but not two or more of them."

Nothing further is needed to show that except as the Act of March 19, 1903, confers upon the appellant the power to do the thing here complained of, it is without right to do so, and we may pass directly to the consideration of the act itself.

That both parties to this controversy fall within the general terms employed in the enactment must of course be conceded; each is a corporation duly chartered, and each is lawfully using electric current in its own appointed territory within this State. Whatever powers are conferred by the act upon such corporations may properly be exercised by either. Can it be said that included in these powers is the right in electric companies to employ electric current in the furnishing of light, heat and power to the public beyond the territorial limits to which their original charters restricted them? Or, are the additional powers conferred only upon such companies as are chartered to operate within the same municipal division and serve the same community? It is simply a question of legislative intent. If the former construction is to prevail, it necessarily follows that the act works a repeal of so much of the Act of April 29, 1874, and its supplements under which all electric companies have been and are chartered, as limits the field of their operation, and that too without a suggestion to be found in the act that such repeal was intended. "The general principles of law upon the subject of the implied repeal of statutes are well settled by the decision, and

indeed are not in dispute. Implied repeals are not favored. If two statutes can stand together, the posterior does not abrogate the prior. This is indeed but the application of a general canon of interpretation—that the whole course of legislation, like the whole of a deed or other instrument of private parties, is to be so construed' that every part and every word shall have effect, if it consistently can, and thus the will of the legislature be completely carried into execution": Erie v. Bootz, 72 Pa. 196. The rule is thus stated in Endlich on Interpretation, Etc., in Section 210: "In order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together, in harmony with the whole course of legislation upon the subject." Can a reasonable field be found for the operation of the act in question, preserving at the same time the force of the earlier law? That such a field may be found is aptly illustrated by the facts of this case, assuming only, in addition, that there is a corporation in Jenkins Township not formed for public purpose, but yet lawfully producing electricity and using electric current. The Jenkins Township Electric Company, while having the charter right to supply the public within its prescribed field, with light, heat and power, for some reason not disclosed, but presumably because of lack of confidence in the adequacy of returns to warrant the expenditure required, has not put itself in position to produce the electricity required, which it could only do, except for this act, by the construction of an electric plant of its own. Under the provisions of the act this will no longer

be necessary, since by contract it may derive whatever current it may need from the private corporation "for whatever purpose formed," if it sees fit to do so. So too, this plaintiff operating in the same field, should it find it of greater advantage to itself to derive its power from some other source than its own plant, "lawfully using electrical current," either in whole or part, we see nothing in the act to prevent it from so doing. Nor is there anything in the act to prevent these two quasi public corporations chartered for service in the same territory, from contracting that one was to supply the other with whatever current it might require. Indeed, this is a privilege that the act expressly confers. The one restriction or qualification is that the contract must be between corporations lawfully entitled to use electric current; and by this is to be understood, lawfully entitled to use electric current under the law as it then stood, which restricts the right of every company to the place where it is located. We do not say that electric companies except for this act could not exercise any of the powers conferred by the act. It is not necessary to so hold. It is enough to say that their right to exercise any of them would be at least disputable. The act puts the right to use them beyond question, and so leaves a wide field of operation for the act, while preserving at the same time the force of the law restricting the operation of all electric companies to the particular districts for which they are chartered. So much for the enacting clause.

If in searching for the legislative intent we are to be confined to a consideration of the language contained in the enacting clause, as appellant insists, we are clearly of opinion that nothing can be derived therefrom indicating other purpose than to confer the additional powers mentioned in the act to electric companies occupying the same field. This being our conclusion, a consideration of the title and preamble of the act becomes proper, not that these may be employed to govern and control the

language of the enacting clause, but, if between them and the conclusion we have above stated there is found to be absolute harmony, then they are confirmatory to an extent that ought to put an end to controversy. The act is entitled, "An Act—To prevent the multiplication of poles, wires and conduits for electrical purposes by authorizing corporations manufacturing or using electrical current for any purposes, to enter into contracts with each other relating to the exchange of current, the joint use of poles, wires and conduits, or the lease or operation of each other's systems." This preamble follows: "Whereas, the multiplying of lines of poles and conduits and different systems of wires for conducting currents of electricity along the various roads and streets of this Commonwealth, is a source of annoyance and danger to the public, and of interference with the proper exercise of municipal functions; therefore, be it enacted," etc.

In express terms the preamble recites an existing mischief—"the multiplication of lines of poles and conduits and different systems of wires for conducting electricity along the various roads and streets of the Commonwealth," which it denounces as "a source of annoyance and danger to the public and an interference with the proper exercise of municipal functions," and for which, in the enacting clause, a remedy is provided. The mischief here denounced can have no existence except where two or more companies using electrical current have a right to occupy the same roads and streets. It is only in such case that there can be any multiplication of lines of poles. We know of no rule of construction that permits an act to be extended by implication beyond the limits of the mischief which the act, whether in title or preamble, denounces as a public menace, and proposes to relieve against.

We pass to the other question raised—has the plaintiff in the bill standing to ask intervention of the court? That it has such standing is denied on the ground that not having an exclusive right to supply current in Jen-

kins Township, it is without right or franchise that would be injured or invaded by the proposed act of the defendant company in supplying current to a competing company, and therefore the case does not fall within the scope of the Act of June 19, 1871. It is true that the complainant company has not an exclusive franchise for the Township of Jenkins in the sense that the grant of a similar franchise to be exercised and enjoyed within the same territory would be void, but, having a franchise for the purpose of constructing and operating a plant to be used for the benefit of the public within said township, such franchise is, and ought to be, exclusive as against all others attempting to exercise such rights without legislative authority. And that is this case. The appellant, as we have seen, is without legal authority in attempting to invade Jenkins Township, and is therefore, in so doing, attempting an illegal act. "It is not necessary to entitle the owner to relief in equity, that the franchise should be an exclusive franchise in the sense that the grant of another similar franchise to be exercised and enjoyed at the same place would be void. The theory is that the defendant, who has no franchise, is acting in violation of law in operating without authority from the sovereign power, and that the owner of the franchise may complain of and restrain such illegal acts when they result in injury to his franchise, which in the eye of the law, is property. As to the one who is invading his rights without legal sanction, the franchise is an exclusive franchise, although the owner of it might not be entitled to any protection as against the granting of a similar franchise to another": Pomeroy on Equitable Remedies, Section 584. No more is it necessary that the complainant should establish the loss it would suffer by the unlawful invasion, it not being a question of the amount of damage, but simply one of right.

For the reasons stated the assignments of error are overruled, and the decree is affirmed.