## Commonwealth v. Troutman.

*Cyrus W. Woods*, Attorney-General, and *Roscoe R. Koch*, Deputy Attorney-General, for Commonwealth.

*J. H. Oliver, P. F. O'Neill* and *John Bigelow*, for defendant.

VALENTINE, J., Nov. 10, 1930.—The defendant has appealed from his summary conviction by an alderman and justice of the peace for having, as superintendent of the Loomis Colliery, owned and operated by the Glen Alden Coal Company, and located in Hanover Township, Luzerne County, operated the boilers at said colliery without having obtained a certificate of inspection from the Department of Labor and Industry and without such certificate being conspicuously posted as required by the Act of May 2, 1929, P. L. 1513.

The Commonwealth's contention is that the provisions of the Act of 1929 are exclusive as to inspection of boilers, and that all boilers, including boilers used for generating steam in and about anthracite coal mines and collieries, must be inspected as required by the provisions of said act.

The defendant's contention is that the Act of 1929 did not repeal, by implication, the provisions of the Act of June 2, 1891, P. L. 176, as to the inspection of boilers, etc., located in and about anthracite coal mines.

If the provisions of the said Act of 1891 as to the inspection of boilers used in and about the anthracite coal mines have not been impliedly repealed by the later Act of May 2, 1929, judgment should be entered for the defendant, otherwise for the Commonwealth. The earlier act (that of June 2, 1891) is entitled "An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania, and for the protection and preservation of property connected therewith."

Section 1 of article 5 of this act provides: "All boilers used for generating steam in and about mines and collieries shall be kept in good order, and the owner, operator or superintendent shall have them examined and inspected by a qualified person as often as once in six months, and oftener if needed. The result of such examination, under oath, shall be certified in writing to the inspector for the district within thirty (30) days thereafter."

It is conceded that the defendant had complied in all respects with the provisions of this section.

The Act of May 2, 1929, is entitled: "An act regulating the construction, equipment, maintenance, operation and inspection of boilers," etc., and expressly repeals section 19 of the Act of May 2, 1905, P. L. 352, "and all other acts or parts of acts" inconsistent with its provisions.

Section 19 of the Act of 1905 (expressly repealed by the later act) had no application to boilers in mines, as section 1 of that act (1905) provided that the term "establishment" where used for the purpose of the act "shall mean any place within this Commonwealth other than where domestic, *coal mining* or farm labor is employed."

The later Act of May 2, 1929, provides that "establishment" shall mean any room, building or place within this Commonwealth where persons are employed or permitted to work for compensation of any kind, to whomever payable, and any place of business to which the public has access, except farms or private dwellings."

It will be observed that the exemption in the Act of 1929 does not expressly include coal mines as did the exemption contained in the Act of 1905.

The Act of 1929 further provides, section 2, General Requirements, "that nothing in this act shall be construed to apply to boilers carrying a pressure of not more than fifteen pounds per square inch, which are equipped with safety devices approved by the department, nor to apply to boilers in municipalities wherein provision is now made by ordinance for their inspection, nor to boilers subject to Federal inspection and control on steam locomotives, railroad cars or steam boats, nor to equipment used in connection with the operation of trains, nor to boilers of other common carriers, nor to boilers used in the operation of oil wells."

It has been argued with considerable force and logic that the exemptions contained in the Act of 1929 indicate a legislative intent that boilers used in and about the anthracite coal mines should be inspected as provided by it.

"The question of the repeal of a statute by a later one is essentially a question of legislative intent, and while a general affirmative act without express words of repeal will not repeal a previous special or local act on the same subject inconsistent with it, this rule is not one of positive law, but of construction only, adopted to settle legislative intent in the absence of words declaring such intent:" Fraim *v.* Lancaster County, 171 Pa. 436.

The anthracite mine industry has been separately treated by the legislature. The Act of 1891, *supra*, was designed to cover, and apparently did cover, every phase of the anthracite industry. Article 5 of this act (P. L.

187) deals with boilers and connections, machinery, etc., in and about such mines.

The right of the legislature to define and regulate the business of mining and preparing anthracite coal has been recognized by our Supreme Court in Durkin v. Kingston Coal Co., 171 Pa. 193. The Act of 1891 completely and specifically regulates the safety measures which must be employed in and about all anthracite mines and stipulates by whom steam generating boilers used therein must be inspected and to whom a report of such inspection must be made. While the fact that the legislature, in passing the Act of 1929, gave a broader definition to the word "establishment" than was contained in the Act of 1905, lends some support to the Commonwealth's contention, yet in the last analysis this case seems to involve the question of the implied repeal of an act which applies to a particular business or industry by a later act of general application to business and industry. Implied repeals are not favored. If two statutes can stand together, the latter does not abrogate the former.

The whole course of legislation is to be construed that every part and every word shall have its effect, if it consistently can, and the will of the legislature be completely carried into execution: Erie v. Bootz, 72 Pa. 196; Com. v. Vetterlein, 21 Pa. Superior Ct. 587; Ochall v. Dvorak, 25 Luzerne Legal Reg. 187; Jackson v. Pennsylvania R. R. Co., 228 Pa. 566.

"In order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together, in harmony with the whole course of legislation upon the subject:" Endlich on Interpretation of Statutes, § 210; Citizens Elec. Co. v. L. & W. V. P. Co., 255 Pa. 145, 152.

An earlier statute is repealed by a subsequent one only in those particulars wherein it is clearly inconsistent and irreconcilable with the later enactment; the leaning of all courts being against repealing the positive provisions of former statutes by construction, unless there be such a manifest and total repugnance between the two enactments that they cannot both stand. It is not enough that there is a discrepancy between different parts of a system of legislation on the same general subject; there must be a conflict between different acts on the same specific subject: Com. v. De Camp, 177 Pa. 112.

In 1 Lewis's Sutherland Statutory Construction (2nd ed.), 466, 467, it is said: "When some office or function can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject. Considerations of convenience, justice and reasonableness, when they can be invoked against the implication of repeal, are always very potent."

The Act of 1929 does not revise the whole subject-matter of the earlier statute as did the acts passed upon in Hammond v. Aluminum Co. of America, 261 Pa. 370; Murdoch v. Biery, 269 Pa. 577, and kindred cases to which counsel for the Commonwealth has called our attention.

We are unable to conclude there is a manifest and total repugnance between the Act of 1891 and the Act of 1929. On the contrary, we think both acts may serve their own purposes and may stand together operating on the same general purpose. There is nothing repugnant in the existence of two methods

for inspecting boilers, one method for inspecting boilers located at the anthracite mines and another method for inspecting boilers at all other establishments. An examination of the Act of 1929 in the light of the foregoing principles indicates that by no necessary implication does it repeal or take the place of any of the provisions of the Mine Law of 1891.

Therefore, now, Nov. 10, 1930, the appeal is sustained, the conviction by the magistrate reversed and judgment now entered for the defendant.

From Frank P. Slattery, Wilkes-Barre, Pa.