# Pennsylvania Utilities Company, Appellant, *v.* Public Service Commission.

*Public Service Commissions—Appeals—Parties—Electric light companies.*

Where an electric light company complains to the Public Service Commission against the attempt of another company to construct facilities in a township, and the commission receives the complaint, directs hearings, takes evidence and dismisses the complaint, the complaining company has a standing to appeal from the order of the commission to the Superior Court.

*Corporations—Merger—Electric light companies—Powers—Certificate of public convenience—Public Service Commission.*

Where an electric light company is created on January 6, 1913, under the Merger Act of May 3, 1909, P. L. 408, by the merger of several electric light companies, and one of these companies was chartered on April 4, 1911, for the purpose of serving electric light to a particular township, and neither this company nor the merger company had done any physical work in the township prior to January 1, 1914, when the Public Service Act became effective but the new company had constructed works in other townships after the merger, the company created by the merger may in 1916, construct its facilities in the township in question without securing a certificate of public convenience as provided by Sec. 2, or Art. III, of the Public Service Act.

Where several corporations are merged under the Act of May 3, 1909, P. L. 408, into a new company, and questions arise concerning an act done in the field of the new company, which act is associated with powers and faculties peculiar to a part of this field because of the scope of powers as they existed in one of the units before the merger, the legality of such act is determined from a consideration of such specific powers as they are vested in the new company as the act of the new company, however, not of the old company. If one of the constituent companies before merger possessed powers and faculties greater than the other members of the proposed consolidation, the merger does not give such other members the benefits of the greater faculties.

In acquiring all the rights and faculties of the constituent companies, they are taken with all their disabilities or limitations, such as may be distinct from the special powers and faculties of a member of the merger. The limitations or conditions common to

all the companies are merged into general limitation or condition applicable to the new company.

Where a merger company formed of several electric light companies proceeds within two years to construct works within various portions of its territory, it cannot be restrained from installing its facilities in a district covered by one of the merged companies, because such company had not done any physical work in such district within two years from the incorporation of that company.

The Public Service Commission in passing upon the right of a public service company to exercise a particular power does not usurp any function of the attorney general. It does not declare a charter void, nor interfere with the right of the attorney general to institute the necessary proceedings to dissolve a corporation.

Argued Oct. 29, 1917. Appeal, No. 5, March T., 1918, by plaintiff from order of Public Service Commission, Complaint Docket No. 1147, dismissing complaint in case of Pennsylvania Utilities Company v. Public Service Commission of the Commonwealth of Pennsylvania and Lehigh Navigation Electric Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Complaint of the Pennsylvania Utilities Company against the Lehigh Navigation Electric Company for attempting to construct its facilities in Palmer Township, Northampton County, without having obtained from the Public Service Commission a certificate of public convenience.

From the record it appeared that on April 4, 1911, the Beechwood Electric Company was chartered to serve Palmer Township with electric light. On January 6, 1913, the Lehigh Navigation Electric Company was created under the Merger Act of May 3, 1909, P. L. 408, by the merger of a large number of electric companies including the Beechwood Electric Company. At the time of this merger the Beechwood Electric Company had done no work in Palmer Township. Prior to the merger one of the merged companies had erected a large generating station and begun a transmission system. After

the merger this work was prosecuted vigorously prior to and after January 1, 1914, which was the date when the public service law became effective. No work was done in Palmer Township until August, 1916, when the Lehigh Navigation Electric Companies attempted to construct its facilities in that township. The Pennsylvania Utilities Company claimed the right under its charter to supply electric light to Palmer Township. The Public Service Commission dismissed the complaint.

*Error assigned* was order dismissing the complaint.

*John R. Geyer,* with him *John E. Fox,* for appellant, cited: Relief Electric Light, Heat & Power Co., 3 P. C. R. 442; Punxsutawney Borough v. Phillips G. & O. Co., 238 Pa. 23.

*I. E. B. Cunningham,* with him *Howard A. Lehman* and *Wm. Jay Turner,* for Lehigh Navigation Company, cited: Penna. Utilities Co. v. Lehigh Nav. Electric Co., 2 Pa. Corp. Rep. 74; Relief Electric Light, Heat & Power Co.'s Petition, 63 Pa. Superior Ct. 1; Jenkins v. Public Service Com., 65 Pa. Superior Ct. 122; Catawissa & Bloomsburg Electric Street Ry. Co. v. Columbia, Etc., Ry. Co., 26 Pa. C. C. R. 550; Punxsutawney Borough v. Phillips G. & O. Co., 238 Pa. 25.

*Berne H. Evans,* for Public Service Commission.

OPINION BY KEPHART, J., July 10, 1918:

The question presented by this and a number of other appeals now before the court is of considerable importance to utility companies in the Commonwealth. After the decision in the case of Bly v. White Deer Mt. Water Company, 197 Pa. 80, there was a great effort by certain utilities to secure charters for the municipal districts they deemed necessary to their present and future plan of development. These concerns found it impossible, be-

cause of the great economic waste, to construct separate operating plants in each of the districts for which charters were secured. The legislature had supplied a way by which the charters might be unified and very much the same result obtained as though a charter for more than one district had been permitted. The Purchase Act of 1876 was largely employed. See Hey v. Springfield Water Co., 207 Pa. 38; Commonwealth v. Lumber City Water Co., 225 Pa. 317; Greensburg Boro. v. Westmoreland Water Co., 240 Pa. 485; and a list of authorities there referred to. As a legal consequence the purchase act differs but little from the merger act which is used to some extent to consolidate companies. This act is now under consideration.

The Lehigh Navigation Electric Company, hereafter termed Lehigh Company, was created under the merger Act by a large number of electric companies authorized to supply light, heat and power to various townships in Carbon, Northampton and other counties. The Beechwood Electric Company, chartered April 4, 1911, to supply Palmer Township, Northampton County, was one of these companies. The merger took place January 6, 1913. Prior thereto, one of the merged companies had erected one of the largest electrical generating stations in the State and had begun to construct a transmission system. After the merger, prosecution of this work was vigorously proceeded with prior to and since the first of January, 1914, the effective date of the Public Service Law. Neither the Beechwood company nor the new Lehigh company had done any physical work in Palmer Township. In August, 1916, the Lehigh company attempted to construct its facilities in this township to serve customers who had demanded service. The Pennsylvania Utilities Company, similarly formed by the merger of a number of other companies, and supplying current in Palmer Township, filed a complaint with the commission. An order having been made adverse to the complainant, the Pennsylvania company appeals.

The right of the appellant as a party aggrieved or affected to take this appeal is challenged. The Pennsylvania company appeared before the commission as a complainant; that body received its protest, directed hearings on account of it, and on the evidence submitted for and against the charge made in the complaint made its order. A protestant's right is ordinarily fixed by the action of the commission. It recognized the complainant as having a sufficient property interest in law to be heard. After such action this court will not now deny to the complainant the right to be heard on appeal. Following the thought expressed in Citizens Elec. I. Company v. Lackawanna & W. V. P. Company, 255 Pa. 145-155, if the Lehigh Company was without legal authority in attempting to invade Palmer Township and was doing an illegal act, the appellant, having a legal right and doing business there, could protest. As to any company attempting an illegal act, the Pennsylvania company had an exclusive franchise. It was a party affected by the order.

It is the theory of the appellant that inasmuch as the consolidated company had not done any business or physical work in Palmer Township prior to the effective date of the Public Service Act, that as to such municipal district the Lehigh Company was a proposed public service company required by the act to secure a certificate. Section 2 of Article III of the Public Service Act provides "Upon the approval of the commission evidenced by its certificate of public convenience, first had and obtained, and not otherwise, it shall be lawful for any proposed public service company—(a) To be incorporated, organized, or created......(b) To begin the exercise of any right, power, franchise, or privilege under any ordinance, municipal contract, or otherwise." It is further urged that inasmuch as the consolidated company and the Beechwood company had not within two years from the date of letters patent proceeded in good faith to carry on its work and construct or acquire its

necessary buildings in Palmer Township, the charter
rights and privileges reverted to the State and it was
without corporate capacity.   It will be observed that the
merger was within two years of the date of the letters
patent of the Beechwood company and prior to the ef-
fective date of the Public Service Act.   Our first in-
quiry must be as to the effect of the merger.   There is
no constitutional inhibition against merger and the leg-
islature is committed to the policy of permitting cor-
porations to merge and consolidate: Hey v. Springfield
Water Co., supra, where the Purchase Act of 1876 was
under consideration.   After merger the status, if they
have any, of corporations which form the merger, and
the effect of acts done or omitted, as they relate to these
constituent companies, or the new company, are entirely
questions of legislative intention.   The Merger Act of
1909, P. L. 408, provides: "Section 1......It shall be
lawful for any corporation......to merge its corporate
rights, franchises, powers, and privileges with and into
those of any other corporation or corporations transact-
ing the same or a similar line of business, so that by vir-
tue of this act such corporations may consolidate, and
so that all the property, rights, franchises, and privileges
then by law vested in either of such corporations, so
merged, shall be transferred to and vested in the cor-
poration into which such merger shall be made."   Then
follow certain exceptions not material.   Section 2 regu-
lates the procedure under which the merger takes place,
requiring that there shall be an agreement which shall
set forth the name of the new corporation, the names of
directors and other officers, the number of shares of
stock and par value, and the manner of converting the
stock of each of said corporations into the stock of the
new corporation.   "Section 3......Upon the issuing of
new letters patent thereon by the governor, the said
merger shall be deemed to have taken place, and the said
corporations to be one corporation under the name
adopted......possessing all the rights, privileges and

franchises theretofore vested in each of them, and all the estate and property, real and personal......all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, and the respective constituent corporations may be deemed to be in existence to preserve the same; and all debts, duties and liabilities of each of said constituent corporations ......may be enforced against it.......But such merger ......shall not be complete......until it shall have first obtained from the governor......new letters patent." It is clear the ultimate effect of this act is to provide a method of incorporation, and, as individuals are associated to form a corporate entity, so two or more corporations may be associated to form a single corporate entity. Upon consolidation thereunder the constituent companies are deemed dissolved and their powers and faculties to the extent authorized are vested in the merged company as a new corporation. It is an entity entirely distinct from that of its constituents. It draws its life from the act of consolidation. The fact that to ascertain the powers and faculties of the new company you must be referred to what existed in the old companies does not affect this result: Railroad Co. v. Georgia, 98 U. S. 359-362; Pullman Palace Car Co. v. Missouri Pacific Railroad Co., 115 U. S. 587-594; 7 R. C. L., Sections 144, 145, 146, 147, and the many authorities there cited. It is not necessary to follow each constituent unit in determining questions which affect the powers and faculties common to all of the several units and which are now exercised by the new concern as its powers for the entire field regardless of the heretofore existing district distinction. The grant of future privileges in certain places, contracts entered into and all forms of corporate enterprise within the scope of the general corporate authority are referable to the consolidated powers as they exist in the new company. Acts done by the new concern, although outside of the place for which one of the old companies

was incorporated are regarded, unless of special application to a particular locality, as being acts done for one company covering many municipal districts as one entire field or district. In the merger of the Lebanon Valley and Reading Railroads, Chief Justice LOWRIE states: "This is called a merger of the Lebanon corporation into the other; but such a merger is a dissolution, destroying the actual identity of both, while the legal identity of one of them is preserved": Lauman v. The Lebanon Valley Railroad Company, 30 Pa. 42. When questions arise concerning an act done in the field of the new company, which act is associated with powers and faculties peculiar to a part of this field because of the scope of powers as they existed in one of the units before the merger, the legality of such act is determined from a consideration of such specific powers and faculties as they are vested in the new company as the act of the new company, however, not of the old company. There is nothing in the Act of 1909 which keeps the constituent company alive for the purpose of preserving these special powers that the question may be determined. They are kept alive when the new company is vested with the faculties that were "by law vested in either of said corporations." If one of the constituent companies before merger possessed powers and faculties greater than the other members of the proposed consolidation, the merger does not give such other members the benefits of the greater faculties: Kane & E. R. R. Co. v. Pitts. & W. R. R. Co., 241 Pa. 608; Punxsutawney Boro. v. Phillips G. & O. Co., 238 Pa. 23. If it may be said that the constituent is kept alive, this existence is purely fictional as an aid in determining, through that medium, the special character of the grant possessed or as provided by the merger act to preserve against the old company any rights which creditors might have, but in legal contemplation this is worked out by its successor in right, the new company. "From the time of the completion of said merger the constituent companies cease to exist," they have no legal identity or

corporate existence, no action can be maintained against such constituent company after the merger as there is no party upon whom papers can be served: Dalmas v. Phillipsburg, Etc., Ry., 254 Pa. 9-15. It is clear then that the Lehigh company was an active, operating company, and as to Palmer Township, was not a proposed company.

In acquiring all the rights and faculties of the constituent companies, they are taken with all their disabilities or limitations, such as may be distinct from the special powers and faculties of a member of the merger. We have considered the faculties as being merged into the new company and extinct so far as the old company was concerned. So would limitations or conditions common to all the companies be merged into a general limitation or condition applicable to the new company, as it covers the entire field and extinct so far as the constituent was concerned. To hold the limitations applicable to each member in its independent capacity will produce great uncertainty and much discord in the legislative idea and working out of the new company and would in effect leave it but a shell, a mere business alliance in which the identity and distinctive existence of the constituent is preserved. One of the limitations is that if the corporation "shall not proceed in good faith to carry on its work and construct or acquire its necessary buildings, structures, property or improvements, within the space of two years from the date of its letters patent......the rights and privileges thereby granted to said corporation shall revert to the Commonwealth": Act of May 16, 1889, P. L. 241. (Whether this could be raised by any one but the attorney general will be considered later.) These constituents were incorporated at different times and if the question here raised is to be referred to the constituent as if the merger had not taken place the corporate life of the consolidation would be dependent on the date of the letters patent of each and the activity of its officers in beginning business. The consolidation

as a new company would have no territory or field within which to operate.

It is difficult to understand how the corporate existence of one of the merged companies could be kept alive to sustain this limitation.   Under the act, its powers and faculties had been transferred, its stock is out of existence, it is without officers, without debts, and the sole characteristic to survive in order to answer this question would be this limitation as applied to the particular corporation under consideration.   This could not be unless the entire corporate life, the powers, faculties and limitations, all survived.   This would be contrary to the great weight of authority.   It would nullify the purpose of the merger act which was to unify existing companies and create a new company.   In order to safeguard the separate charter rights and privileges of merged companies under a construction here asked for, it would be necessary for each unit to construct independent works in the district covered by each one of the merged companies.   It would be an economic waste for such companies to construct transmission lines or works in advance of its ability to utilize them.   It is contrary to the spirit of the public service law which seeks the minimum cost to reduce rates.   The purpose of the merger act was to create a community of interest with maximum economy in production and effective service as a resultant benefit to the public.   These limitations and conditions are just as much a part of the corporation as are its faculties and powers and must so be regarded.   When the Lehigh company built its transmission lines through other portions of the district and furnished its commodity from its central station in these districts, these acts were in behalf of and on account of all the territory and inured to the benefit of the entire field to the same extent as it did in the locality where the business was actually transacted.   It was in exercise of the general functions of the corporation and though no work was done in Palmer Township as such, the commission

having found that the new company in good faith proceeded to carry on its work, it satisfied the requirement of the Act of 1889. If it later develops, through lapse of time or from other cause, that the Lehigh Company has failed to meet its charter obligations, the law has provided an ample remedy by which those in authority may correct the evil. This may be done just as completely as though the constituent still existed. We, therefore, hold that the commission's order was reasonable and in conformity to law when it determined the Lehigh Company was one company, that it was in good faith actually exercising its powers and faculties under its charter obligations before January 1, 1914. That it was then doing business in a large part of its territory and was as to the entire field not a proposed public service corporation. Being a corporation actually doing business and desiring to further perform its charter obligations by supplying its commodity to persons resident within its territory, the public service act does not require it to secure a certificate of public convenience. Section 2 of Article III cannot apply to a company actually engaged in the business called for in its charter. Section 18 certainly did not have in contemplation a certificate for each step taken by a company doing business on January 1, 1914, and we can quite easily see a decided difference between such company and one that had received its letters patent and had totally failed for more than two years after their issuance and before the public service act went into effect to acquire any property or do anything in performance of its duty to the public. Such concerns now seeking to do business, having no property of any kind and being entirely outside the Act of 1889 present a much different proposition. Such was the case of Jenkins Township v. Public Service Commission, 65 Pa. Superior Ct. 122, and Relief Electric L., H. & P. Co.'s Petition, 63 Pa. Superior Ct. 1.

One word with respect to the right of the commission to consider this question. The commission does not un-

dertake to usurp any function of the attorney general. As we said in the Jenkins case, supra: "This act (of 1889) was a part of its organic law and was the limitation placed by the State on the grant contained in the letters patent." The commission does not declare a charter void. They simply decide, if they find a thing without lawful powers or life, not to infuse new life into it. Their action defines their attitude as a commission toward the enforcement of an act of assembly where a violation of the law is admitted. It still remains for the attorney general to institute the necessary proceedings to declare the charter void. The legislature in the creation of the commission conferred upon it authority to deal with the powers and faculties of corporations. It may be viewed in much the same light as the question presented in Homestead St. Ry. v. Pittsburgh & Homestead Elec. St. Railway, 166 Pa. 162, where conflicting charter rights to a street were determined by a bill for an injunction.

The order of the commission is affirmed, the costs to be paid by the appellant.