# Harmony Electric Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission — Public Service Company Law — Electric light companies—Merged companies—Doing business before effective date of Public Service Company Law—Chartered territory—Right to operate therein—Jurisdiction—Boroughs—Use of streets—Act of May 16, 1889, P. L. 228—Consent of borough.*

An electric light company formed from the merger of twenty-six other companies, and doing business prior to the effective date of the Public Service Company Law, is not required to secure a certificate of public convenience to commence business in any portion of its chartered territory. Being a corporation actually doing business and desiring to further perform its charter obligations by supplying its commodity to persons resident within its territory,

the Public Service Company Law does not require it to secure the permission of the Public Service Commission.

Under the provisions of the Act of May 16, 1889, P. L. 228, an electric light company cannot enter upon the streets of the borough until the consent of the borough council to such entry shall have been obtained. An ordinance providing for such consent must be approved by the Public Service Commission, but such approval relates only to the use of the streets by the company, and is not required before the company can commence business, as long as it does not occupy the borough streets. The consent of the borough to supply electricity in the municipality is not necessary.

*Public Service Company Law—Electric light companies—Competing companies—General policy of noncompetition.*

Where two competing electric light companies are already established in a district, the commission cannot drive one out of the field as long as it is furnishing adequate service and willing to do so, and confiscate its property simply because it feels that one corporation could supply the needs of the community.

It has no more right to effect confiscation in this respect than it has in regard to rates. It may refuse to approve municipal contracts or further extension of municipal privileges, preventing competition to that extent. But so long as it has not forfeited or is not abusing its charter powers, a public service company cannot be deprived of its vested rights, simply because the commission may adopt a general policy of noncompetition.

LINN, J., dissents.

Argued November 15, 1921. Appeal, No. 51, April T., 1922, by Harmony Electric Company, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket No. 4115, in the case of Harmony Electric Company v. The Public Service Commission, and Pennsylvania Power Company, Intervening Appellee. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Modified.

Petition by Pennsylvania Power Company to the Public Service Commission asking that Harmony Electric Company be enjoined and restrained from constructing transmission line in the Borough of Ellwood City and be

enjoined from furnishing service to any customer within the limitation of said borough.

The facts are stated in the opinion of the Superior Court.

The commission, under date of April 5, 1921, entered the following order:

Now, to wit, April 5, 1921, it is ordered: That the Harmony Electric Company, respondent, forthwith cease and desist from constructing a distribution line or any additional facilities for the purpose of supplying electric current to consumers in the Borough of Ellwood City, and said respondent is hereby enjoined and restrained from furnishing light, heat or power by means of electricity in said borough.

The above order is made without prejudice to the right of the Harmony Electric Company, respondent, to make formal application to this commission for approval of the beginning of the exercise of any alleged rights within said municipality.

*Error assigned* was the order of the commission.

*David I. McCahill,* of *McCahill & McCahill,* for appellant.—The commission was without jurisdiction to restrain the appellant from furnishing service in Ellwood City because it was a corporation duly organized and existing prior to the effective date of the Public Service Company Law.

New Castle Electric Co. v. Public Service Commission, 70 Pa. Superior Ct. 22; Pennsylvania Utilities Company v. The Public Service Commission, 69 Pa. Superior Ct. 612.

The failure of the Public Service Commission to approve the contract between the Harmony Electric Company and the Borough of Ellwood City cannot deprive the appellant of the rights which it had which were not dependent on the contract.

*Douglass D. Storey* and *Berne H. Evans,* for Pennsylvania Power Company, intervening appellee.—When the legislature gives a public utility the right to supply a municipality and to use the streets, provided it secures municipal consent, it means that its grant shall not be effective unless the consent of the municipality is secured: Scranton E. L. & H. Co.'s Appeal, 122 Pa. 154; Allegheny County Light Company v. Booth, 216 Pa. 564; Allegheny v. Millville, etc., Ry. Co., 159 Pa. 411; Appeal of City of Pittsburgh, 115 Pa. 4; Telephone Company v. Homer City Borough, 252 Pa. 497.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., March 3, 1922:

The order appealed from in this case is based on the proposition that the appellant company [respondent below], was required by law to obtain from the Public Service Commission a certificate of public convenience before it could perform any of its chartered powers in the Borough of Ellwood City. This appears from the following extracts from the order: "The commission is of opinion that the Harmony Electric Company, respondent, should have applied to the commission for a certificate of public convenience evidencing the approval of the commission of the proposed rendition of electric service in the Borough of Ellwood City before said respondent had entered said municipality and commenced the construction of its lines and facilities preparatory to rendering said service"......"The above order is made without prejudice to the right of the Harmony Electric Company, respondent, to make formal application to this commission for approval of the beginning of the exercise of any alleged rights within said municipality." If this proposition cannot be sustained,

it follows that the order should be reversed or modified to the extent that it is not in conformity with law.

Harmony Electric Company, appellant, was formed by the merger of twenty-six corporations duly organized for the supply of light, heat and power by means of electricity. All of these companies were duly incorporated, and the merger or consolidation was completed and work begun as required by law, before the Public Service Company Law went into effect; in which respects the case differs from Relief Electric L., H. & P. Co.'s Petition, 63 Pa. Superior Ct. 1, and Jenkins Twp. v. P. S. C., 65 Pa. Superior Ct. 122. It makes no difference from a legal standpoint what length of time elapsed between such consolidation and the effective date of the Public Service Company Law.

The situation was then precisely like that passed on by this court in Penna. Utilities Co. v. P. S. C., 69 Pa. Superior Ct. 612, where it was held that such a merged or consolidated company doing business in a part of its territory was "as to the entire field not a proposed public service corporation." The court, speaking through Judge KEPHART, said: "When the Lehigh Company built its transmission lines through other portions of the district and furnished its commodity from its central station in these districts, these acts were in behalf of and on account of all the territory and inured to the benefit of the entire field to the same extent as it did in the locality where the business was actually transacted...... Being a corporation actually doing business and desiring to further perform its charter obligations by supplying its commodity to persons resident within its territory, the Public Service Company Act does not require it to secure a certificate of public convenience. Section 2 of article III cannot apply to a company actually engaged in the business called for in its charter. Section 18 [article V] certainly did not have in contemplation a certificate for each step taken by a company doing business on January 1, 1914." (pp. 621-622.)

Following that decision the right of this very appellant company to do business throughout its entire field was recognized and affirmed by this court in New Castle Electric Co. v. P. S. C., 70 Pa. Superior Ct. 20, and Penna. Power Co. v. P. S. C., 70 Pa. Superior Ct. 24. In the former case, its right to do business in Shenango Township was questioned by one competitor; in the latter, its right in Wayne Township by another competitor, the present intervening appellee. The principles enunciated in the case of Penna. Utilities Co. v. P. S. C., supra, were reiterated and it was held that this appellant had a right to supply electricity in those districts without applying for a certificate of public convenience, Judge KEPHART saying in the Shenango Township case: "When the company recorded its charter, it could have engaged in the business of supplying electricity in that township without further authority. There was no commission in existence which had power to issue a certificate of public convenience" (p. 24). This language applied with equal force to the entire consolidated territory. The good faith of the appellant company in beginning and carrying on business was adjudicated in those cases.

We, therefore, start with the proposition established by the Penna. Utilities Company case, supra, that the appellant company having been formed by a merger of a number of duly chartered corporations, authorized to supply electricity in their several districts, prior to January 1, 1914, when the Public Service Company Law went into effect, and having likewise begun its operations in good faith before that date, it was "as to the entire field not a proposed public service corporation" and did not require the certificate of public convenience provided for in article III, section 2, and article V, section 18, before it could perform its chartered powers anywhere within that field. One of the constituent companies of the consolidated corporation was the Ellwood Electric Company which was incorporated to supply light, heat and power by means of electricity to

the public, etc., in the Borough of Ellwood City. Upon the merger of this corporation into Harmony Electric Company, the Borough of Ellwood City became included within the consolidated field of the Harmony Electric Company and under the decision in 69 Pa. Superior Ct. 612, the merged company was not as to Ellwood City a proposed public service corporation and had the right to supply electricity to the public, etc., within said borough, subject to the provisions of the Act of May 16, 1889, P. L. 228, relating to such corporations, without securing the certificate of public convenience required by the Public Service Company Law of a proposed public service company.

The Act of 1889, which provides for the incorporation of electric light, heat and power companies makes only one distinction between supplying light, heat and power by electricity in a city or borough and in a township or other district: As to a city or borough no such company "shall enter upon any street in any city or borough of this Commonwealth until after the consent to such entry, of the councils of the city or borough in which such street may be located, shall have been obtained" (p. 137) ; otherwise there is no difference. It will be noted that the act, differing from the constitutional provision as to street railways [article XVII, section 9], does not say "shall not be constructed," or "shall not carry on business," or, "shall not begin the exercise of any rights" or "shall not supply electricity" but restricts the prohibition to, shall not "enter upon any street," etc. The act details at great length the powers of the company: (1) Authority to supply light, heat and power or any of them by electricity to the public, etc.; (2) power to make, erect and maintain the necessary buildings, machinery and apparatus for supplying such light, heat and power or any of them, and (3) to distribute the same, (4) with the right to enter upon any public street, lane, alley, or highway for such purpose, to alter, inspect and repair its system of distribution. And then follows the proviso:

"Provided that no company......shall enter upon any street in any city or borough of this Commonwealth until after the consent to such entry, of the councils of the city or borough in which such street may be located, shall have been obtained." In other words the consent of the city or borough authorities to supply electricity in the municipality is not required but only its consent to enter upon any street therein; the use of the word "street" a second time, in the phrase, "of the councils of the city or borough in which such street may be located" shows that the limitation was not accidental but intentional, and was not meant to apply to the other powers enumerated in the grant of authority before quoted. By its merger and carrying on business in good faith before the effective date of the Public Service Company Law the appellant company, therefore, had the right to supply electricity anywhere within its entire field or territory— and this included the Borough of Ellwood City—without applying to the Public Service Commission and securing the certificate of public convenience required of a proposed public service company, provided, however, that before it entered upon any street of Ellwood City, or any other borough, the councils of the borough "in which such street may be located" must consent to such entry, and if such consent is obtained after the effective date of the Public Service Company Law, the ordinance evidencing such consent must be approved by the Public Service Commission, [article III, section 2 (b)]; but that approval is limited to the "exercise of the right, power, franchise or privilege" asked for under the "ordinance or municipal contract" presented for approval, which in the case just cited, would be to the entry of the company upon the street or streets of the borough. Its general right to do the business for which it was incorporated—to supply electricity—would not come before the commission; it possessed that already by virtue of being a public service corporation actually carrying on business within the territory comprising the borough,

before the Public Service Company Law went into operation.

A large part of the distribution line, the further construction of which the Public Service Commission has enjoined, is located in Wayne Township. We have already decided in the case of Penna. Power Co. v. P. S. C., 70 Pa. Superior Ct. 24, that the appellant company has a right to do business,—which includes the construction of its lines and facilities,—in said township, without securing a certificate of public convenience. We are of the opinion that under the authorities above cited the appellant company has also the right to perform its chartered powers, that is, to supply electricity, to the public in the adjoining Borough of Ellwood City without obtaining such certificate of public convenience, to the extent that it does not enter upon any street or highway of said borough. Before it can make such entry upon any street or highway of the Borough of Ellwood City, it must first secure an ordinance authorizing such entry and the terms and provisions of said ordinance will have to be approved by the Public Service Commission.

Our conclusions are not affected by the fact that in the year 1914 the Public Service Commission, upon the protest of the intervening appellee, refused to approve a contract between this appellant and the Borough of Ellwood City under which appellant agreed to furnish said borough all the electric current used therein for street, commercial and domestic lighting for a period of ten years, (affirmed by this court in 71 Pa. Superior Ct. 355, though appellant's right to furnish electricity within the borough was then not disputed, p. 357), or that in approving the erection of a high-power transmission line running from Harmony Junction through said borough to Koppel, there was annexed a condition, as stipulated in the borough ordinance granting permission to construct said line, that the line thus erected in the borough should not be used to furnish electric light or power within said borough. The orders of the commis-

sion upon these applications were necessarily limited to the subjects then under consideration. The commission had a legal right, in its judgment, to refuse its approval of a contract between the borough and this company, or to annex conditions as to the use of a line, the construction of which had been provided for by borough ordinance, but in refusing the one application or in annexing conditions to the other the commission could not take away from the electric company any of its chartered powers granted to it by law and which it had not forfeited by laches, nonuser, or other default: Bethlehem City Water Co. v. P. S. C., 70 Pa. Superior Ct. 499, 501. Putting the shoe on the other foot, for example, the Public Service Commission in 1914 could have refused to approve a contract between the Pennsylvania Power Company and the Borough of Ellwood City by which the power company proposed to sell electric current to the borough, but in doing so it could not have deprived the company of its vested charter authority to supply power within the borough apart from that embraced in the proposed contract.

The Public Service Commission has great powers given to it by the act creating it, but they are limited to those expressly granted to it or such as are implied necessarily from a grant of such powers: Coplay Cement Mfg. Co. v. P. S. C., 271 Pa. 58. Indeed the act specifically reserves to every public service company "the full enjoyment and exercise of all and every the rights, powers and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise provided" (article III, section 12). If a corporation under the law has authority to do business within a prescribed territory without applying for a certificate of public convenience, it does not lose that right or make its exercise subject to the veto of the Public Service Commission because it submits to that body for approval a municipal contract or ordinance which can only be valid when approved by the commission. The right of the

Public Service Commission to approve or disapprove a municipal contract or ordinance does not carry with it authority to forbid altogether the exercise of its general chartered powers possessed by the contracting corporation, if not in default: Bethlehem City Water Co. v. P. S. C., supra.

The record does not show the present appellant to have been in default in its attempt to perform its chartered powers within the borough of Ellwood City. It does not convict it of laches. The record shows a succession of attempts on the part of the appellant company to supply electrical service in the Borough of Ellwood City, frustrated largely by the efforts of the intervening appellee. We do not have here the situation presented in the case of Fogelsville & Trexlertown Electric Co. v. Penna. Power and Light Co., 271 Pa. 237. There the Pennsylvania Company took no steps to perform its chartered obligations in Macungie Township, and in order that the public might not be deprived of the service which it failed to supply, the Fogelsville Company was organized with the consent of the commission and, against the protest of the Pennsylvania Company, was chartered to furnish electric light, heat and power in that township. After the Fogelsville Company had made large expenditures and was performing the duty which it was thus authorized to perform, the Pennsylvania company then attempted to fulfil its chartered obligations and furnish electric current in competition with the Fogelsville Company and the latter sought to enjoin such operations within the township. The Supreme Court held that a court of equity was not the proper forum in which to test the right of the Pennsylvania Company to do a competing business in said township, and that the proceeding should have been by complaint to the Public Service Commission but preserved the status quo created by the injunction until such complaint could be filed. In the instant case the Pennsylvania Power Company has done nothing by reason of any

action or inaction on the part of this appellant company which it otherwise would not have done. So far as the record shows it has made no expenditures, it has incurred no obligations by reason thereof. Whatever delay may have occurred in the supply of electric current by appellant company within its chartered territory has been largely due to the hindrances interposed by the power company. The situation is not at all parallel. It is true that in the Fogelsville case, as well as in the Relief Electric Company case, 63 Pa. Superior Ct. 1, stress was laid on the present policy of the Commonwealth to avoid destructive competition between electric light companies as well as other public utility corporations. This is now the policy of the Commonwealth as declared by the Public Service Commission, but the policy had to be, for the most part, prospective not retrospective. Until the passage of the Public Service Company Law and the adoption of its policy by the commission, the Commonwealth had no declared policy on the subject and from time to time permitted competition in public utilities to exist; and even now the noncompetitive policy is not absolute or a binding rule of law, for it is within the power of the Public Service Commission, in its judgment, to permit a competing company to be established, as it did in the case of the Fogelsville & Trexlertown Electric Co., and its judgment under such circumstances is not subject to review. But even this declared policy of the commission is subject to limitations. Where two competing companies are already established in a district, the commission cannot drive one out of the field so long as it is furnishing adequate service and willing to do so, and confiscate its property simply because it feels that one corporation could supply the needs of the entire community. It has no more right to effect confiscation in this respect than it has with regard to rates. It may refuse to approve municipal contracts or further extension of municipal privileges, preventing competition to that extent. It may require a company to con-

form to certain standards of efficiency or cease to do business. But as long as it has not forfeited, or is not abusing, its chartered powers, a public service company cannot be deprived of its vested rights simply because the commission may adopt a general policy of noncompetition. This was seen from our ruling in the Penna. Utilities Company Case, 69 Pa. Superior Ct. 612, and the Harmony cases in 70 Pa. Superior Ct. pp. 20 and 24, where it was recognized that under chartered powers obtained before the Public Service Company Law went into effect, two companies had the right to supply electric light, heat and power competitively in certain townships and that the approval of the commission to the exercise of its powers by the last chartered company was not necessary. It may be that if the Harmony Company had not been organized, consolidated and carrying on business on January 1, 1914, the Public Service Commission might properly have refused to approve its incorporation as a proposed public service company on the ground that the field was already supplied, at least as to certain districts. But the facts are that the company was incorporated, consolidated and carrying on business in good faith before the Public Service Company Law went into effect, and as was said by Judge KEPHART, "there was no commission in existence which had power to issue [it] a certificate of public convenience." Being thus in existence it had certain chartered rights which it was entitled to exercise if it had not lost them by its delay, nonuser or other circumstances justifying the intrusion of a later company. We have seen that none of these circumstances exist; that the delay has not been of the appellant's making but was largely caused by the intervening appellee. When the latter has used every resource in its power to prevent the appellant from performing its charter rights, it is scarcely in a position to complain that they have not been used to their full extent.

We are, therefore, of the opinion that the appellant company has a right to construct its line and supply current in the Township of Wayne and in such parts of the Borough of Ellwood City as do not require it to enter upon any of the streets or highways of said borough or use the high tension line heretofore constructed within borough limits, without first securing a certificate of public convenience from the commission. The testimony as to whether the distribution line proposed by the appellant company will cross or enter upon Tenth Street or the alley to the east of it, is conflicting. The Public Service Commission made no finding on the subject and we are not called upon to do so. The line can be built as far as Tenth Street without entering upon any borough street. It must not be constructed upon, over or under any street or highway of the borough until the consent of the borough has first been obtained and such consent has been approved by the Public Service Commission. We therefore modify the order, so as to provide that the Harmony Electric Company shall cease and desist from constructing a distribution line or any facilities for the purpose of supplying electric current which will constitute an entry or encroachment upon, under or over any of the streets or highways of the borough of Ellwood City until the consent of the said borough to such entry has first been obtained from the borough authorities and approved by the Public Service Commission. It is also ordered that the appellant company shall not furnish any electric current or contract or offer to furnish the same within the Borough of Ellwood City until it has complied with the provisions of article II, section 1 (d), and article III, section 7, of the Public Service Company Law, and has filed, posted and published its schedules relative thereto as required by law.

The order of the Public Service Commission is modified so as to conform with the order here entered. Each party to pay its own costs.

DISSENTING OPINION BY LINN, J.:

On appeal from the commission to this court, the record "shall include the evidence taken......": Act July 11, 1917, P. L. 808, amending article VI, section 18. Article VI, section 24, provides "If the court shall, upon the record find that the order appealed from is reasonable and in conformity with law, it shall enter a decree dismissing the appeal and affirming the order of the commission......" The record now before us contains ample evidence that appellant was constructing a transmission line across Tenth Street without a certificate as required by section 12, article V of the Public Service Company Law, and, also, in violation of section 2 of the Act of May 8, 1889, P. L. 136.

I do not agree that our duty is confined to the limits suggested by the following statement in the opinion of the majority: The Public Service Commission made no finding on the subject [occupying Tenth Street] and we are not called upon to do so." The statute requires that we consider the record; if such consideration shows appellant was constructing the line across Tenth Street, we must treat that fact established; we may not disregard it because no specific finding to that effect was stated by the commission, though of course we might return the record to the commission specifically to state the facts supporting its order.

As a review of the evidence shows the occupation of Tenth Street, I think the order should be affirmed as reasonable and in conformity with law, a conclusion making it unnecessary to pass on the relevance in this proceeding (1) of the commission's refusal on July 3, 1914, to approve the contract between appellant and the borough; and (2) of the certificate of January 7, 1915 (M. C. 403-1914).