## Consolidation of Banks.

*Banks and banking—Consolidation—Duration of existence—Special privilege—Act of May 3, 1909.*

1. When a new corporation is created as a result of a consolidation, it is an entity distinct from its constituents, although it takes over their rights, privileges, franchises and property and assumes their liabilities.

2. Where two banks, incorporated by special acts with different periods for their corporate existence, consolidate under the Act of May 3, 1909, P. L. 408, the consolidated bank will continue to exist during the longest period of existence possessed by either of its constituents.

3. Such of the special privileges possessed by the constituents having the shortest existence will vest in the consolidated bank, and will not expire until the corporate existence of the consolidated bank itself expires.

4. If the charter of the consolidated bank is renewed at the time the charter of the constituent having the shortest period of existence expires, it will not be necessary to renew the charter of the other constituent.

Department of Justice. Opinion to Hon. Irland M. Beckman, Second Deputy Secretary, Department of Banking.

METZGER, Dep. Att'y-Gen., Feb. 2, 1927.—This department is in receipt of your letter of Jan. 17th, in which you ask to be advised concerning the date of expiration of charter of the People's Savings and Dime Bank and Trust Company, a Pennsylvania corporation formed by the consolidation of two State banks, and, in view of the period of existence of one of the constituent banks,

the effect of such merger upon certain special privileges possessed by such constituent.

The facts are as follows:

The Scranton Savings Bank was incorporated by Special Act of the Legislature, approved Feb. 28, 1867, P. L. 292, and it was rechartered on Aug. 24, 1906, to exist twenty years from Feb. 28, 1907.

The Dime Deposit and Discount Bank of Scranton, Pennsylvania, was incorporated under the General Banking Act, approved May 13, 1876, P. L. 161, and it was rechartered on June 7, 1910, to exist twenty years from June 19, 1910.

On June 3, 1913, these two institutions merged and consolidated under the provisions of the Act of May 3, 1909, P. L. 408, forming a new corporation under the title People's Savings and Dime Bank and Trust Company.

You ask the following questions:

1. When will the charter of the consolidated corporation expire?

2. Will such special privileges of the Scranton Savings Bank, acquired under the Act of Feb. 28, 1867, as vested in the consolidated corporation, expire on Feb. 28, 1927, unless the consolidated corporation renews its charter prior to such date?

3. If the consolidated corporation renews its charter prior to Feb. 28, 1927, will it be necessary to renew the charter of the Dime Deposit and Discount Bank, one of the constituents, prior to June 19, 1930?

1. Taking these questions up in order, we find that section 1 of the said Act of May 3, 1909, provides that: "It shall be lawful for any corporation . . . to merge its corporate rights, franchises, powers and privileges with and into those of any other corporation or corporations, . . . so that by virtue of this act such corporations may consolidate, and so that all the property, rights, franchises and privileges *then* by law vested *in either* of such corporations so merged shall be transferred to and vested in the corporation into which such merger shall be made."

Section 3 of said act provides: ". . . upon the issuing of new letters-patent thereon by the Governor, the said merger shall be deemed to have taken place and the said corporations to be one corporation under the name adopted . . . possessing all the rights, privileges and franchises *theretofore* vested *in each* of them, and all the estate and property, real and personal, and rights of action of each of said corporations, shall be deemed and taken to be transferred to and vested in the said *new* corporation. . . ."

Clearly the language of this act contemplates a consolidation, strictly speaking, that is, the formation of a new corporation. It has been uniformly held that, when a new corporation is created as a result of a consolidation under this act, it is an entity distinct from its constituents, although it takes over their rights, privileges, franchises and property and assumes their liabilities: Pennsylvania Utilities Co. *v.* Public Service Commission, 69 Pa. Superior Ct. 612.

Many text-writers state that the life of a new corporation created by a consolidation is not the unexpired term of the constituents, but is that of any like corporation formed under existing laws: 7 Ruling Case Law, 170; Thompson on Corporations (2nd ed.), § 6048; Fletcher's Cyclopedia Corporations, § 4702; Note 89 A. S. R. 631. When the cases cited in support of this statement are examined, it is found, without exception, that the statutes which authorized the particular consolidations in question either expressly provided that a new period of existence might be inserted in the consolidation agreement, or provided that the consolidation agreement should contain provisions

similar to those contained in original articles of incorporation, or in some general language contained provisions which clearly conferred upon the merging corporations the authority to insert a clause with reference to corporate existence in such agreement.

The authorities uniformly hold that the rights of the consolidated corporation must be determined by a study of the statute authorizing the consolidation. Section 1 of the said merger act provides that "all the property, rights, franchises and privileges *then* by law vested in either" of the constituents shall be vested in the new corporation; section 3 states that all the "rights, privileges and franchises *theretofore* vested in each" constituent shall be vested in the new corporation. Clearly this language contemplates that the new corporation shall be vested merely with that which the constituents had. Paragraph 1 of section 2 of the act provides what shall be inserted in the merger agreement; it makes no reference, either in specific or general terms, to a provision as to the corporate existence of the new company growing out of the consolidation, and it has accordingly been ruled that no such provision may be inserted. In interpreting the entirely similar provisions of the merger act of May 29, 1901, P. L. 349, John F. Whitworth, Corporation Deputy, in an opinion, approved by the Attorney-General April 9, 1907 (Opinions Corporations by Whitworth, page 125), said: ". . . as to the term of existence of the new corporation, the act does not prescribe; but as all the rights and franchises of the constituent companies are transferred to the new corporation, its corporate life would depend upon that of the constituent corporations. The term of the corporate existence of the new corporation should not be set forth in the agreement of merger and consolidation unless it be shown therein that all the constituent corporations were incorporated for the same term as that named in the agreement." See, also, opinion of Attorney-General Carson In re Bellevue and Perryville Street Ry. Co., 32 Pa. C. C. Reps. 243, 248.

In only one case which has come to the writer's attention has a court indicated that the consolidated corporation might be limited in its existence to the life of the constituent company having the shortest period of existence when no period of existence was authorized to be fixed in the merger agreement. Such was the query made in New Orleans Gas Light Co. *v.* Louisiana Light, etc., Co., 11 Fed. Repr. 277, a very old case, but it is now commonly admitted that such is not the law: Thompson on Corporations (2nd ed.), § 6048.

Furthermore, the ordinary meaning of the language used in sections 1 and 3 of the merger act here in question shows a legislative intention to give to the new corporation all that "either" or "each" of the constituents had; this would vest in it the right or franchise to exist during the longest period of existence possessed by any constituent. I am, therefore, of the opinion that the charter of the consolidated corporation will expire June 19, 1930, unless it is previously renewed in the manner provided by law.

2. I am likewise of the opinion that such of the special privileges possessed by the Scranton Savings Bank, as vested in the consolidated corporation at the time of consolidation, will not expire on Feb. 28, 1927. As a result of the merger and consolidation on June 3, 1913, the constituents were dissolved and a new corporation formed. This new corporation obtained all of the property, rights, franchises and privileges then by law vested in "either" or "each" of the constituents. From the Scranton Savings Bank it may have acquired certain special privileges. From the Dime Deposit and Discount Bank it obtained the right to exist until June 19, 1930. The new corporation, as a single entity, manifestly cannot possess two separate and distinct periods of existence; if it could, great uncertainties would arise and it could scarcely be considered a

new corporation and a single entity. Pertinent here is the language of Judge Kephart in explaining the effect of a merger under this act in the case of Pennsylvania Utilities Co. v. Public Service Commission, 69 Pa. Superior Ct. 612, 618: "It is clear the ultimate effect of this act is to provide a *method of incorporation*, and, as individuals are associated to form a corporate entity, so two or more corporations may be associated to form a single corporate entity. Upon consolidation thereunder, the constituent companies are deemed *dissolved* and their powers and faculties to the extent authorized are vested in the merged company as a new corporation. It is an entity entirely distinct from that of its constituents. *It draws its life from the act of consolidation.*"

Thus, any suggestion that this conclusion attempts by implication to extend in duration the special privileges of the constituent that would have expired in 1927 but for the consolidation is unwarranted; consolidation is a method of incorporation, and from this incorporation springs the life of the new company with the right to exist for a certain period, that is, the longest period of life possessed by any constituent. If this amounts to an extension in duration of the special privileges of one constituent, it is an extension properly effected under the legislation contained in the merger statute. As stated by Mr. Justice Strong, as to the effect of a consolidation in the case of Atlantic & Gulf R. R. Co. v. Georgia, 98 U. S. 359, 364: "What, then, was left of the old companies? Apparently nothing. They must have passed out of existence and the new company must have succeeded to their rights and duties. But the new company comes into existence under a fresh grant. Not only its being, but its powers, its franchises and immunities are *grants of the legislature which gave it existence.*"

Thus, from the one constituent, the new corporation as a distinct entity and in its entirety, not merely a certain part of it, acquired the right to exist until June 19, 1930; from the other constituent it may have acquired certain special privileges. As a result of the consolidation, the special privileges so acquired will be possessed by the new corporation during its entire period of existence. In deciding an exactly similar question, it was said in the case of Board of Administrators of Charity Hospital v. New Orleans Gas Light Co., 4 Southern, 433, 435: "It is not disputed by the defendant company that, as a legal result of the amalgamation, the obligation theretofore resting on the New Orleans Gas Light Company to supply gas, free of charge, to the Charity Hospital adhered to the consolidated company, but the contention is that the obligation was only coequal with the duration of the charter of the company which was burdened with that duty, and that, therefore, the obligation became extinct on the 1st of April, 1875, at which time the charter of the company is alleged to have expired. That conclusion is predicated on the proposition that the consolidation of the two previous companies operated merely a merger of one of the corporations into the other, and that the measure of the rights, privileges and franchises or vitality infused in the consolidated company, by each of the consolidating corporations, was the respective terms of duration of the charters of each. But that argument finds no support either in the facts of the case or in well-settled jurisprudence on the question of the effects of an amalgamation of two distinct and coexisting corporations. In dealing with the question of the legal effects of the consolidation of the identical companies now under discussion, this court said: 'The articles of consolidation and the legislation act, by authority of which they were executed, evidently present a case of complete and perfect amalgamation, the effect of which was, under American authorities, to terminate the existence of the original corporations, to creat a new corporation, to transmute the members of the former

Consolidation of Banks.

into members of the latter and to operate a transfer of the property, rights and liabilities of each old company to the new one.' "

And on page 426: "Hence, we cannot adopt the reasoning which would measure the consolidated *powers, privileges or obligations* of the present company by reference to the term of duration of the charters of the former companies."

3. The answers to your first two questions practically dispose of the third question. If the charter of the consolidated corporation is renewed prior to Feb. 28, 1927, it will not be necessary to renew the charter of "the other individual institution," the Dime Deposit and Discount Bank, prior to June 19, 1930. This, for the reason that such constituent no longer has a charter in its individual capacity. The renewal of the charter of the consolidated corporation any time prior to June 19, 1930, will, therefore, be a sufficient compliance with the law to insure in the consolidated corporation all of the rights, franchises and privileges possessed by either constituent.

From C. P. Addams, Harrisburg, Pa.